## LOTT *v.* STATE EX REL. KELLY.

No. 41686          June 6, 1960          121 So. 2d 402

*M. M. Roberts*, Hattiesburg, for appellant.

*Hugh McIntosh*, Collins, for appellee.

ETHRIDGE, J.

This suit originated in the Circuit Court of Covington County by a petition of appellee, on behalf of relator Frank Kelly, to require appellant Denson Lott, Covington County Superintendent of Education, to enter into a contract with Kelly to serve as principal at the Mt. Olive School Attendance Center. Lott contends, correctly we think, that, as County Superintendent of Education, he has the sole power to make recommendations for employment of principals, and the County Board of Education has no power to appoint Kelly as principal in the absence of his recommendation. The circuit court

directed issuance of the writ requiring Lott to contract with Kelly. Lott appealed with supersedeas.

## I.

The statute involved is Sec. 5, Ch. 20, Miss. Laws 1953, Extra. Sess., being Miss. Code 1942, Rec., Sec. 6282-05: "Superintendent to recommend principals—approval.—As soon as possible after the 15th day of January, and in no event later than the 15th day of February of each year, the superintendent of each school district shall recommend to the board of trustees thereof the principals to be employed for each of the schools of the districts except in the case of those principals who have been previously employed and who have a contract valid for the ensuing scholastic year. Unless good reason to the contrary exists, the board of trustees of the district shall approve and authorize the employment of the principals so recommended, and if, for any reason, the board of trustees of any school district shall decline to approve a principal so recommended the superintendent shall make additional recommendations for the place or places to be filled."

The Mt. Olive School Attendance Center is part of a county-wide school district, consisting of three high school attendance centers. Lott's term as County Superintendent of Education began in January 1960. A county superintendent has many duties in administration of schools of a county. Most of them are outlined in Code Sec. 6252-07, which, in part, gives him the power to "enter into contracts in the manner provided by law with each superintendent, principal and teacher of the public schools under his supervision, after such superintendent, principal and teachers have been selected and approved in the manner provided by law." He is also the executive secretary of the county board of education. Code Sec. 6271-10. See also Secs. 6252-01 to 6252-12, 6271-08 to 6271-10.

A county board of education consists of five members, one of which is elected by the qualified electors of each of the five supervisor's districts of a county. Sec. 6271-01. The board has full control of the distribution and disbursements of all minimum education program funds. Sec. 6274-03. It is the governing body of each county-wide district, as that of Covington County. Sec. 6328-04. As such, it has all of the duties, rights, powers and authority conferred upon boards of trustees of school districts under any of the statutes of the state. Sec. 6328-07 (c). In other words, it has broad powers as the governing authority of a county-wide school district. Secs. 6271-06, 6271-06.5, 6274-02. Sec. 6274-08 provides:

"The county superintendent of education shall be and serve as the superintendent of county-wide school districts under the government of the county board of education, and he shall perform his duties as such under the directions and supervision of the county board of education. In such county-wide district subject to the government of the county board of education the county board of education shall have the power and authority to prescribe and to enforce rules not inconsistent with law, or the regulations of the state board of education, or the state educational finance commission, for the government and operation of the schools and for the transaction of the business thereof."

The stalemate which resulted in this lawsuit stemmed from the appointment of a principal of the Mt. Olive Attendance Center. The minutes of the county board of education of February 1, 1960, reflect that Lott recommended a man as principal for the Mt. Olive Center, but four of the five school board members voted for a motion to disapprove him. A member of the school board nominated appellee Kelly for a three-year contract at Mt. Olive. Kelly had been serving for thirteen years. Lott stated the motion was out of order, since the school board had no right to recommend a principal, this power

being that of the county superintendent. Four members
of the board did not agree, and voted "to approve Mr.
Kelly for a three-year contract." The minutes of Feb-
ruary 10 show that Lott made an additional recommen-
dation for principal of the Mt. Olive Center, but no
action was taken on it. The minutes of February 15
reflect that a motion was carried to correct the minutes
of February 1, to retain Kelly as principal at Mt. Olive
for three school years.

The next action on the minutes of the county board
of education is a resolution which it passed by a four
to one vote on March 7, 1960. It recites that the county
superintendent recommended in succession three dif-
ferent persons to serve as principal for the Mt. Olive At-
tendance Center, but the board found they were not
suitable and qualified. The resolution then deals speci-
fically with each of the three recommendations made
by Lott. An emergency had arisen, since a principal
had not been agreed upon. The resolution states that
the board's attorney advised it to appoint a principal,
so teachers could be employed for the ensuing school
year, with or without agreement of the county superin-
tendent; Kelly had acted as superintendent of this school
for thirteen years, and a great majority of its patrons
desired his reelection; he was fully qualified, and the
best applicant, and a failure to appoint him would cause
unrest and dissension in the school; and it was the board's
policy to adopt recommendations of local school trustees
and patrons. Hence the board appointed Kelly to serve
as principal for three years, and requested the county
superintendent to recommend him. It directed him to
prepare a contract with Kelly and to meet with the Board
on the next day, March 8, and execute it.

The minutes of March 8 reflect that Lott refused to
enter into the contract with Kelly, because he had not
recommended him, and "a hopeless disagreement exist-
ed between him and the county school board." The
board directed Kelly to bring this action, so this peti-

tion for mandamus was filed on March 17. After a lengthy hearing, the circuit court rendered its judgment, overruling defendant's demurrer to the petition, and adjudicating the relief sought should be granted. The judgment commanded Lott within ten days to enter into a contract to employ Kelly as principal of Mt. Olive Attendance Center for three years, on the terms directed by the county board of education.

The evidence shows that Lott made no particular investigation of the three men whom he recommended. He had some acquaintance with them, but he made his recommendations orally and briefly, giving the board practically no information about their qualifications and fitness. He had written applications from each of the three recommendees, but he did not furnish the board with them and the information and references set forth in them. The board's order of March 7 refused to approve the three nominees, two on the ground of inexperience as principals of a high school, and the third for the reason that, after an investigation by a committee sent to that nominee's residence, the board concluded he was not qualified because of inadequate administrative ability. There is substantial evidence in the record to constitute "good reason" for disapproval by the board of the three nominees.

On the other hand, it is apparent that four members of the county board of education had determined not to accept any recommendation of Lott, but to appoint Kelly as principal under a new contract. The board did this on February 1, before appellant made his two additional recommendations.

Lott took the position it was his right to recommend, and the board's duty to do the investigating. He so advised members of the board. The local trustees of the Mt. Olive School are unanimously in favor of re-election of Kelly. Apparently this controversy originated in the primary elections of last summer, when Lott issued newspaper statements asserting that some of the

schools of the county were headed by "professional politicians." In response, the principals of the three high schools, including Kelly, published a newspaper statement in which they criticized Lott's candidacy, and came out actively in support of his opponent.

## II.

▮▮ The decision of this case turns upon the interpretation of Code Sec. 6282-05 (Sec. 5) as applied to the instant facts. It is manifest it contemplates that, in county-wide school districts, the county superintendent of education has the exclusive right to recommend to the county board of education the principals to be employed. The statute is in mandatory terms, that he "shall recommend". The second sentence then states that, "unless good reason to the contrary exists", the board "shall approve and authorize the employment of the principals so recommended." The duty of the board to act affirmatively on the superintendent's recommendation is again in mandatory terms, "unless good reason to the contrary exists". The legislature anticipated to some extent that the superintendent and board might not agree, so Sec. 5 further provides that, if the board declines approval of a recommendation, "the superintendent shall make additional recommendations for the place or places to be filled." Nowhere in the statute is any provision anticipating a stalemate between the board and the superintendent. However, the legislature clearly intended the board could make appointments only from recommendations of the county superintendent of education.

▮▮ The difficulty here arises because the board on February 1 rejected one of the superintendent's recommendations and undertook itself to exercise the full appointive power. It had the right to reject the recommendation, for cause, but not to make the appointment of one not recommended. Again, on March 7, the board's order listed numerous reasons why it did not approve

the three recommendations of the county superintendent. The county board of education is an administrative agency. There was substantial evidence to support a finding by the board of "good reason" for denying approval of Lott's three recommendations. We do not reverse the board on the "good reason" given. However, the board had no power under the statute to make appointment of a principal who was not recommended by the county superintendent. Hence the board's attempted appointment of Kelly was invalid.

■■ ■ Neither the appellant nor appellee has acted in accordance with the plain terms of the statute. Lott is required to recommend to the board principals to be employed. The word "recommend" in the context of this act contemplates the county superintendent will recommend principals in writing, and will submit to the board the results of an investigation which he has made into the qualifications of his nominee. Manifestly the legislature intended the recommending party to have knowledge of the facts as to his nominee, and to communicate them to the board of education when he submits his recommendation. Otherwise the process of nomination is of no substantive assistance to the board, which is the controlling authority of the schools in a county-wide district. On the other hand, it is manifest the county board determined it was going to contract with Kelly, irrespective of the county superintendent's attitude.

Although political and factional considerations should not enter into a recommendation by a county superintendent and an approval by a county board, it is not a judicial function to determine the extent to which those factors affected Lott and the board. Applying the statute, it is clear that the county superintendent has the exclusive power of recommendation; the board has the power of approval or disapproval for a good reason. This bifurcated division of authority may not be a wise administrative procedure, but its propriety is a decision

of the legislature. In short, the county superintendent should make recommendations to the board with details as to the qualifications of the nominee. He owes a duty to the board to make a full disclosure and report. The board should then consider impartially the qualification of the nominee, and if there is no good reason why he is not qualified, the board "shall approve" the recommendation, without regard to the individual preferences of a majority of the board as to whom they think should be principal.

Section 5 does not provide for an unlimited power of appointment in the board if it does not agree with the superintendent's recommendation. The failure to so provide indicates the legislature did not intend to vest this unrestricted power in the board. This interpretation is confirmed by comparing Sec. 5 with Secs. 4 and 6 of the same act.

This method of divided responsibility in the process of selecting school principals and teachers is not unique to Mississippi. Many states have a similar system, and in all of the cases interpreting it the courts have held the exclusive power to recommend is in the county superintendent, with the county board having only the power of approval or disapproval; and it is the duty of the county board to approve unless good reason for disapproval is shown.

78 C. J. S., Schools and School Districts, Secs. 171-174, contain a comprehensive discussion of this subject. Section 172 states: "Where a statute provides that the board of education shall appoint teachers or principals only on the recommendation of the superintendent, the board has no power to appoint a teacher without his recommendation, and an appointment made without such a recommendation is void notwithstanding a rule of the board purporting to give it absolute power over appointments. . . . Under some statutes the board ordinarily is under a duty to appoint or elect a nominee recommended by the superintendent in the absence of proper

and substantial grounds for acting otherwise, such as the nominee's lack of moral and educational qualifications; . . ." The text cites numerous cases in support of this rule.

Georgia's minimum foundation program for schools was enacted in 1949. In Tripp v. Martin, 210 Ga. 284, 79 S. E. 2d 521 (1954), the Court considered Sec. 4 of this act, which provides that teachers and principals "shall be elected by the boards of education on the recommendation of the respective superintendents". It was held this provision is mandatory and not directive. The county board of education brought a mandamus proceeding against the county superintendent to require him to execute contracts with certain teachers employed by the board without the superintendent's recommendation. The Court denied the petition, and held it was the superintendent's duty to recommend. The board must select and employ those teachers "needed from the number recommended by the county school superintendent."

In Florida, the county superintendent of public instruction recommends teachers and principals, and the county trustees appoint those recommended, unless rejected for good cause. In State ex rel Wilder v. Adams, 74 So. 2d 65 (Fla. 1954), petitioner was recommended by the county superintendent for appointment as principal, but the board refused, assigning petitioner's alleged political activity. It was held the trial court erred in denying the petition, because the evidence as to such alleged activities did not support the board's finding that there was "good cause" for denying the recommendation.

Kentucky has a somewhat similar statute, which has resulted in a large amount of litigation. It provides that all appointments, promotions and transfers of principals and teachers "shall be made only upon the recommendation of the superintendent of schools, subject to the approval of the board." In Reed v. Greene, 243 S. W. 2d 892 (Ky. 1951), it was held the language of the

statute was "clear and certain", and the superintendent "has the sole authority to recommend the appointments; the authority vested in the board, is to approve, or disapprove the recommendations. Therefore, the recommendation of the superintendent is a condition precedent to the right of the board to employ . . ." Parenthetically the Kentucky statute further provides that, if the board and the county superintendent cannot agree upon a principal, the board may appeal to the board of education and the decision of that body shall be final. Beverly v. Highfield, 307 Ky. 179, 209 S. W. 2d 739 (1948). Smith v. Beverly, 314 Ky. 651, 236 S. W. 2d 914 (1951), summarizes the Kentucky interpretation: ". . . it is the mandatory duty of a board of education to elect a recommendee of its superintendent, if such recommendee possesses the necessary moral and educational qualifications; and, in passing on any recommendations made by its superintendent, no board has the right to arbitrarily reject a recommendee, but it is limited in its right of rejection, in the exercise of sound discretion, to determine whether the recommendee is morally fit or educationally qualified for the position to which he is recommended."

In West Virginia, it was held in Cochran v. Trussler, 141 W. Va. 130, 89 S. E. 2d 306 (1955), as follows: "The statute plainly contemplates an agreement between the County Superintendent of Schools and the Board of Education upon all persons employed in those capacities. The Board may refuse to accept the nominations of the County Superintendent, but it is specifically forbidden to employ any person in these capacities who has not been nominated by the County Superintendent." The West Virginia Act is a little more specific than that of Mississippi and other states, in that it expressly says no teacher or principal "shall be employed except on the nomination of the County Superintendent." However, the plain terms of Sec. 5 and related statutes reach the same result as that in West Virginia.

Maine has a somewhat similar provision, requiring nomination by the school committee. See Benson v. Inhabitants of Town of Newfield, 136 Me. 23, 1 A. 2d 227 (1938). Other related decisions are cited in the footnotes to the quoted part of 78 C. J. S., Schools and School Districts, Sec. 172.

In summary, Code Sec. 6282-05 places the exclusive recommending power for principals in county-wide school districts in the county superintendent of education, which recommendation the county board of education must approve, "unless good reason to the contrary exists." If disapproved, for good reason, the superintendent makes additional recommendations. This divided authority is expressly created by the statute. The Covington County Board of Education had no power to appoint Kelly, in the absence of the county superintendent's recommendation. There is substantial evidence to support the finding of the county board that the superintendent's three nominations were rejected for "good reason". However, the county board erred in attempting to thereafter make an appointment of Kelly without Lott's recommendation. Hence the circuit court was in error in directing appellant to sign a contract with Kelly as principal. He did not recommend him. Accordingly, the judgment is reversed, and judgment is rendered here dismissing appellee's petition for writ of mandamus.

Reversed and judgment rendered.

*McGehee, C. J.,* and *Hall, Lee, Kyle,* and *Gillespie, JJ.,* concur.