**Noelle M. HENRY, Plaintiff,**

v.

**COAHOMA COUNTY BOARD of EDUCATION, Paul M. Hunter, Superintendent, et al., Defendants.**

**No. D–C–43–62.**

United States District Court
N. D. Mississippi,
Delta Division.

Dec. 23, 1963.

R. Jess Brown, Jackson, Miss., and Derrick A. Bell, New York City, for plaintiff.

Maynard, Fitzgerald & Maynard, Clarksdale, Miss., for defendants.

CLAYTON, District Judge.

Plaintiff filed her complaint against the County Superintendent of Education and the Board of Education of Coahoma County, Mississippi, alleging that the board had failed to rehire her as a schoolteacher for the school year 1962–1963 because she and her husband are and were engaged in certain civil rights activities with goals and objectives contrary to the policies and views of defendants. She seeks injunctive relief to require that defendants rehire her as a teacher. Through informal assistance from the court and with the cooperation of counsel for defendants technical requirements of process were perfected or in effect waived in order to make the case triable and to avoid any further unnecessary delay. It was heard by the court sitting without a jury on complaint and answer. At the conclusion of the hearing the court directed that the case be submitted on memorandum briefs of the parties. Within the time fixed for plaintiff's brief to come in, she moved to amend her complaint under Rule 15(b), Federal Rules of Civil Procedure, to conform to the evidence by adding as an additional ground for the relief sought allegations that defendants failed to re-employ plaintiff because of her husband's involvement in lawsuits and a criminal prosecution and the possibility that plaintiff would be joined in a suit to set aside as fraudulent, conveyances of property made to her by her husband. This motion is opposed by defendants and was taken with the case for consideration on briefs. That motion will be dealt with first.

Plaintiff and her husband are both Negroes and the suit as originally filed was predicated on the theory that defendants did not re-employ plaintiff because of her activities and the activities of her husband in the field of civil rights for members of the Negro race. While the underlying purpose of the rule is to permit final disposition of a case on the evidence rather than on pleadings, this proposed amendment would in fact almost entirely change the character of the case.

In addition, here we are confronted with a peculiar situation which presents a serious problem of notice and an opportunity to be heard with a full and fair opportunity to develop evidentially the point of inquiry now raised as an issue in the case for the first time by the motion to amend, several days after the hearing was over. The evidence which forms the basis for the motion came into the case in response to questions from the bench. It did not result from nor was it developed by questions from counsel. And, it came in *over objection by plaintiff*.

It was then and is now quite obvious that neither side had prepared to try the case with this area of inquiry in mind. It was equally apparent that neither side at the hearing considered that the court's inquiry had injected a new issue into the case. With reasonable notice there can be little doubt but that this aspect of the controversy could be much more fully developed.

Second thoughts now make it seem that this court might have been derelict in not directing a supplemental hearing, with reasonable notice, for the full evidential development of only this one aspect of the controversy. Undoubtedly, if plaintiff had moved promptly to amend at the close of the hearing such a course of action then would have been followed. Modern concepts of justice under our notice practice seem to dictate, in this situation, with the incomplete development of this area of inquiry, that the amendment be not now, at this late date, allowed. In 1A Barron & Holtzoff, Federal Practice and Procedure, § 449 (Wright Ed. 1960) it is said:

> As has been pointed out earlier, however, fair notice remains essential, and pleadings will not be deemed amended to conform to the evidence because of a supposed "implied consent" where the circumstances were such that the other party was not put on notice that a new issue was being raised. * * *

> The right to amend to conform to proof is necessarily dependent upon the individual facts and circumstances. * * *

Accordingly, the motion to amend will be overruled.

However, in order that the Court of Appeals may have the benefit of this court's views with respect to the incomplete development of the "lawsuit" aspect of this case, in the event of an appeal, it will be dealt with just as if the plaintiff's motion to amend had been sustained here.

In order to put all of the questions in this case in proper perspective the statutory system which exists in the State of Mississippi for the employment of all teachers in such a school system as that with which we are concerned in this case must be understood. Briefly, this system is that teachers have no tenure, but are employed on a one year contract basis. These contracts develop by the principal of each attendance center recommending to the county superintendent of education teachers for employment in his school. If the county superintendent agrees with these recommendations, he recommends to the county board of education that the people so recommended be employed for that school as teachers for the next school year. If the county superintendent does not agree with the recommendations made by the principal, he makes recommendations on his own initiative. In either event the board of education is powerless to employ anyone as a teacher in such a public school system unless that person is recommended by the county superintendent[1]. This question was specifically at issue in the case of Lott v. State ex rel. Kelly, 239 Miss. 97, 121 So.2d 402 (1960). And the court held clearly that the board of education had no power to employ as a teacher a person not recommended by the superintendent of education.

In Lott, the position at issue was that of principal of an attendance center. For that position the recommendation to the

---

1. Miss.Code Ann. (1942) § 6282-07.

board originates with the superintendent, but the authority of the board is no different[2]. In that case the superintendent recommended one person to the board for employment in the position, but the board undertook to employ another who for political and personal reasons had not been recommended by the superintendent and the superintendent refused to give the board-selected person a contract. Suit was to require him to sign the contract. The Supreme Court of Mississippi, inter alia, said:

> The difficulty here arises because the board on February 1 rejected one of the superintendent's recommendations and undertook itself to exercise the full appointive power. It had the right to reject the recommendation, for cause, *but not to make the appointment of one not recommended.* * * * However, *the board had no power under the statute to make appointment of a principal who was not recommended by the county superintendent.* (Emphasis added.)

◼ The evidence here is plain and uncontradicted that the county superintendent did not recommend plaintiff for employment. Hence, the board was without any authority to employ her and should not, therefore, properly be in this case. The board would be properly in the case (if it could be at all) only if the superintendent had recommended plaintiff and the board had declined to follow the recommendation. Plaintiff is entitled to no relief against the board.

The question raised by the proposed amendment to the complaint, which has been referred to as the "lawsuit" part of this case will be dealt with next. Responding to questions put from the bench the county superintendent stated that the reasons for his refusal to recommend plaintiff for employment were that the husband of plaintiff had been convicted in a court of record on a morals charge; that two libel suits were pending against the husband by the Chief of Police of the City of Clarksdale and the Prosecuting Attorney of Coahoma County, and, that he had been reliably informed that plaintiff would probably be sued to set aside as fraudulent, conveyances of property made to her by her husband.

◼ In essence as the court understands it from the sparse record made on trial, his position was that plaintiff's husband had become notorious in the community and that plaintiff was "tarred with the same brush" in the public mind by reason of her marriage and that she, too, probably would become personally and unfavorably involved in the public mind with the aforementioned fraud action. And, that because of these circumstances she had become unsuited to teach young children[3]. Assuming *arguendo* for the moment that the superintendent's discretion is subject to judicial review, it has long been recognized that a teacher of young people occupies a sensitive position. For example, in Adler v. Board of Education, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952) it was said:

> A teacher works in a sensitive area in a schoolroom. There he shapes the attitude of young minds towards the society in which they live. In this, the state has a vital concern. It must preserve the integrity of the schools. That the school authorities have the right and the duty to screen the officials, teachers, and employees as to their fitness to maintain the integrity of the schools as a part of ordered society, cannot be doubted. One's associates, past and present, as well as one's conduct, may properly be considered in determining fitness and loyalty. *From time immemorial, one's reputation has been determined in part by the company he keeps.* (Emphasis added)

---

2. Miss.Code Ann. (1942) § 6282–05.

3. It is also uncontradicted that the superintendent did not recommend another teacher for re-employment because of the bad reputation for moral misbehavior of that teacher's spouse.

Thus, it would appear here that the superintendent had good cause and exercised a sound discretion, and that his actions should not now be overturned.

To deal properly with the one principal question presented by the complaint it is necessary to summarize plaintiff's theory with respect thereto and the evidence before the court. The essence of plaintiff's theory is that she and her husband are long time members of the National Association for the Advancement of Colored People; that her husband is and has been Mississippi president of this organization; that these activities are contrary to the policies and views of defendants; that she was not re-employed as a teacher because of these facts; and, that thereby she was denied her rights contrary to the Constitution of the United States, especially amendments XIV and V.

█ █ It does not require the citation of any authority to sustain the proposition that it was plaintiff's burden to establish her case on this theory by a preponderance of the evidence. This she failed to do. In fact, the plain, uncontradicted evidence is that neither her membership nor the membership of her husband in the NAACP, nor the activities of either or both of them in working for the goals and objectives of this organization had anything to do with the refusal of the county superintendent to recommend her to the board of education for re-employment for the school year 1962–1963.

The evidence does show that she was employed, on successive one year contracts, as a teacher in this school system for a period of eleven years (with only one break for one year, which apparently was at her own choice). It also shows that she was recommended for re-employment and that she was re-employed for many years after her membership and the membership of her husband in the NAACP, and the activities of both in the "civil rights" area were well known to the defendant superintendent and his predecessor in this office. There are no racial or civil rights overtones in this record with respect to plaintiff's relationship with the public school officals of Coahoma County nor with respect to the fact that she was not recommended for re-employment as a teacher.

The real reason for the refusal of the superintendent to recommend plaintiff for re-employment (which is uncontradicted by any evidence in this record) has been dealt with heretofore in discussing what has been called the "lawsuit" phase of this case and plaintiff's motion to amend.

█ It also must be borne in mind that plaintiff had a one year contract for the school year 1961–1962, that this contract was fully performed by the parties thereto, that it ran its course and expired. That contract is not and could not be in this case. By its terms and under the statutes no rights survived its expiration to any of the contracting parties. Defendants could not have required plaintiff to accept another contract, nor can plaintiff now require that she be given a new contract. The fact that she had been employed as a teacher for one year (or for more than one year) gave her no rights to re-employment for the school year 1962–1963, or for any other year. Whether she would or would not be employed for another year depended entirely on whether she would or would not be recommended by the superintendent. He did not recommend her. That ends the matter.

As was said also in Lott, supra:

Although political and factional considerations should not enter into a recommendation by a county superintendent and an approval by a county board, *it is not a judicial function* to determine the extent to which those factors affected Lott and the board.

The laws of the State of Mississippi, as interpreted by its Supreme Court in Lott are binding on this court in this case since there is no provision of the Constitution or laws of the United States to

the contrary. 28 U.S.C. § 1652. And, the evidence is wholly insufficient, as has been said, to make applicable here the constitutonal theory relied on by plaintiff.

■ It also needs remembering that it is not now nor has it ever been within the purview of judicial power to make contracts for parties. Monrosa v. Carbon Black Export, Inc., 359 U.S. 180, 79 S.Ct. 710, 3 L.Ed.2d 723 (1959); Memphis & L. R. R. Co. v. Southern Export, 117 U.S. 1, 6 S.Ct. 542, 29 L.Ed. 791 (1882).

None of the cases cited by plaintiff can give her any real comfort. Some of them, for example, deal with the discharge of teachers during the contract period. Clearly they are not in point. Others deal with the power of a state with respect to the creation of standards for the admission to a profession. These have no application here. Another has to do with a suit by Negro teachers for salaries equal to those paid for white teachers. No question of salary is involved in this case. Another holds that there can be no discrimination in the law with reference to the following of occupations. No such discrimination is at issue here. All other authorities cited are equally beside the point, with the exception of Adler, supra, which in part supports this court's view of this controversy.

From what has been said, it seems obvious that plaintiff is not entitled to the principal relief sought and this court will not require by injunction that she be reemployed as a teacher in the public school system of Coahoma County, Mississippi.

Ancilliary to the principal relief sought plaintiff attacks a requirement of state law that teachers annually file an affidavit listing all organizations of which they are members. Inasmuch as plaintiff in her present status as a non-teacher is not affected by this requirement, this issue is now moot.

Plaintiff is entitled to no relief and an order is being entered this date in accordance with this opinion.