**CHARED CORPORATION, Transferee of the British-American Oil Products Company, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 28951.

United States Court of Appeals,
Fifth Circuit.

July 13, 1971.

J. W. Bullion, Buford P. Berry, Dallas, Tex., for plaintiff-appellant.

Eldon B. Mahon, U.S. Atty., Martha Joe Stroud, Asst. U.S. Atty., Dallas, Tex., Stanley F. Krysa, Trial Atty., Department of Justice, Washington, D.C., John O. Jones, Tax Atty., U.S. Department of Justice, Fort Worth, Tex., Johnnie M. Walters, Asst. Atty. Gen., Ann E. Belanger, Lee A. Jackson, Attys., U.S. Dept. of Justice, Washington, D.C.,

William A. Friedlander, Washington, D.C., for defendant-appellee.

Before JONES, BELL and THORNBERRY, Circuit Judges.

PER CURIAM.

The appellant, Chared Corporation, seeks to recover taxes paid to the United States. The issue before this Court is stated by the appellant in the following language: "Whether advances made by The British-American Oil Producing Company to its Canadian parent corporation, The British-American Oil Company, Limited were loans or dividends. The district court held that the advances were dividends as to which The British-American Oil Producing Company should have withheld tax." Chared Corporation is the transferee and successor in interest of The British-American Oil Producing Company. The evidentiary facts are not in dispute. They were in large measure stipulated. These facts, both stipulated and shown by evidence taken before the court, so far as material to a decision of this appeal, are set forth in the findings of fact and conclusions of law of the district court. These are appended hereto as an appendix. It is the contention of the appellant that the district court was in error in its determination that advances made by the subsidiary to the parent corporation were dividends rather than loans. The district court found that there was no intention that these advances were to be repaid and therefore were not loans. If the district court was correct in determining that there was no intention that the advances should be repaid, then the advances were not loans and it follows that they were dividends.

■ The appellant says that the question is not to be tested by the clearly erroneous doctrine of Rule 52(a) but that this Court should review the case de novo. The law is otherwise. The Supreme Court, on a number of occasions, has stated that the clearly erroneous rule applies to inferences drawn from undis-puted facts as well as in cases where there is a factual issue under the evidence. The Supreme Court has said:

" * * * appellate review of determinations in this field must be quite restricted. Where a jury has tried the matter upon correct instructions, the only inquiry is whether it cannot be said that reasonable men could reach differing conclusions on the issue. * * * Where the trial has been by a judge without a jury, the judge's findings must stand unless 'clearly erroneous.' Fed.Rules Civ.Proc., 52(a). 'A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed 746. The rule itself applies also to factual inferences from undisputed basic facts, id., 333 U.S. at page 394, 68 S.Ct. at page 541, as will on many occasions be presented in this area." Commissioner of Internal Revenue v. Duberstein et ux, 1960, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218.

Supporting this doctrine are United States v. United States Gypsum Company, 1948, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746, and Commissioner of Internal Revenue v. Welch, 5th Cir. 1965, 345 F.2d 939.

■ The clearly erroneous doctrine applies where the inferences are as to design, motive and intent. United States v. Yellow Cab Company, 1949, 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150; United States v. Board of Education of Greene County, Mississippi, 5th Cir. 1964, 332 F.2d 40. The applicable principles are discussed by Professor Wright in 2B, Barron and Holtzoff, Federal Practice and Procedure (Wright Ed.) 516, § 1132.

The principles announced in United States v. Winthrop, 5th Cir. 1969, 417 F.2d 905, stressed by the appellant are not applicable here.

Other contentions of the appellant need not be discussed. They are without merit.

■ The findings of the district court with respect to the intent that the moneys advanced should not be repaid and the district court's determination that these payments were in fact dividends rather than loans are fully justified by the undisputed evidence and are not clearly erroneous. It follows that the judgment of the district court should be and it is

Affirmed.

## APPENDIX

IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION

CHARED CORPORATION, TRANSFEREE OF THE BRITISH-AMERICAN OIL PRODUCING COMPANY,

Plaintiffs,

CIVIL ACTION No.
versus        CA–3–2078

UNITED STATES OF AMERICA,
Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The above-entitled cause, having been tried before the Court, sitting without a jury, and the Court having fully considered the record, does hereby make its findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure:

### FINDINGS OF FACT

1. The facts admitted by the pleadings and contained in the stipulations filed in this cause are hereby adopted as facts in these findings.

2. Plaintiff, Chared Corporation, is a non-profit Texas corporation, incorporated to hold title to real property, certain personal property, to collect the income therefrom and turn over the entire amount thereof, less expenses, to such charitable and educational organizations as its Board of Directors should select.

3. The British-American Oil Company, Limited (hereinafter "BA") is a publicly held Canadian corporation formed in 1906, whose stock is traded on Canadian stock exchanges. Although a fully integrated oil company, it never engaged in a trade or business in the United States.

4. On February 10, 1925, BA formed the British-American Oil Producing Company (hereinafter "Producing") as a Delaware corporation. Producing was originally formed to develop producing oil fields which were then being discovered in Oklahoma. Since its formation, and during the years involved, Producing was a wholly-owned subsidiary of BA. Its operations have been confined to the United States.

5. Gulf Oil Corporation (hereinafter "Gulf") is a Pennsylvania corporation engaged principally in the exploration for production, refining and marketing of petroleum and its products in the United States and other countries.

6. Prior to 1956 Canadian Gulf Company, (hereinafter "Canadian Gulf") was a Canadian corporation wholly owned by Gulf. By 1956, Canadian Gulf was the second largest producer of oil in Canada.

7. On July 1, 1956, Gulf acquired control of BA, which was accomplished by the sale of the entire issue share capital of Canadian Gulf to BA in consideration for the issue of 8,335,648 shares of BA stock. Thereby Gulf owned a ⅔rd interest in the common shares of BA during all the years in question.

8. Plaintiff, as transferee of Producing, seeks to recover $12,145,778.04, together with interest thereon as provided by law. The Internal Revenue Service assessed against and collected from the plaintiff for the years 1959 through 1965 a tax of $8,315,200.00 on the grounds that net advances of $60,150,000 from Producing to BA constituted dividends instead of loans. As an addition to the tax, the IRS assessed and collected $2,078,800.00 as a delinquency penalty on

the ground that Producing had not filed the required withholding tax returns and that its failure to file these returns was due to willful neglect, not reasonable cause. The remainder of the amount in suit is assessed interest.

9. The parent, BA, as sole stockholder of Producing, had and exercised complete control over the funds of Producing. Producing was treated as a department of BA, an integrated company, rather than as a separate entity.

10. During the period in question, there was a policy requiring "approximately 50% of the profits" of Producing to be "paid out in dividends with the balance retained for expansion."

11. No security was given for the continually mounting advances, which reached $60,150,000.00 by mid-1965 and were projected by BA's five year operating plans to reach $87,133,000.00 by 1967.

12. During the year 1959 there was no evidence of any obligation to repay the advances. On January 18, 1960, non-interest bearing demand notes were executed to cover the 1959 advances. On December 22, 1961, BA issued interest-bearing demand notes for all advances to that date, aggregating $25,000,000.00, including interest-bearing notes executed in substitution for the prior non-interest bearing notes. From time to time interest payments were made on these notes to Producing but were cycled back to BA as further advancements.

13. In the books of accounts of the two corporations, the advances were treated as accounts receivable by Producing and accounts payable by BA. But budgeting and other corporate papers in evidence show these payments were made as dividends to BA. Repayment of the notes was never planned or budgeted.

14. Under the arrangements existing between BA and Producing, funds paid BA above by Producing would not be returned absent approval by BA of special projects of outstanding merit. Producing was unable to enforce any demand on BA without its consent; BA, being the sole stockholder and beneficial owner of Producing's funds could have either discharged and replaced any demanding officers or liquidated Producing as a corporate entity. Such a demand would have been "ridiculous". No action was ever taken by Producing to enforce repayment of its advances to BA.

15. The funds advanced by Producing were available for payment of dividends and were used for general purposes of BA, including payment of dividends to its own stockholders (Gulf being owner of two-thirds of the stock).

16. No resolution of the board of directors of either company was ever passed authorizing the loan or borrowing of the funds advanced or authorizing the execution of any evidence of indebtedness arising out of these advances, by notes or otherwise.

17. Producing declared and paid dividends as such prior to 1959. During the years in question, the directors of Producing never declared any formal dividend.

18. British-American needed these funds for developing its properties; Producing did not. No corporate purpose of Producing was served by making loans to BA instead of paying dividends, except the avoidance of taxes.

19. Producing's rate of earnings on investments was lower than BA's earnings on investment in Western Canada. BA had duplicated companies (Producing and Canadian Gulf). Disposition, merger and liquidation of Producing were considered from 1960 on, and by the spring of 1964 the sale or disposition of Producing was determined to be in the best interests of BA.

20. In the autumn of 1965 Producing was offered for sale to Gulf, who referred BA to plaintiff, Chared Corporation ("Chared"). On May 9, 1966, BA entered into an agreement with Chared, which was amended on May 27, 1966, whereby Chared would purchase the stock of Producing held by BA for a price of $182,544,000.00. Also on May 9, 1966, Chared and Gulf entered into an agreement whereby Chared agreed to

cause Producing to liquidate and to sell all of its assets to Gulf except for a reserved production payment and cash. On July 28, 1966, the date of the closing, BA borrowed $60,150,000.00 used by BA to pay its outstanding notes to Producing, which notes represented funds received under the dividend policy from Producing. In addition, BA paid Producing at that time $1,855,460.00, which represented the interest due on the demand notes. On the same date, July 28, 1966, after making the foregoing payment to Producing, the outstanding stock held by Producing was transferred to Chared for a purchase price of $182,544,000.00. Chared, in accordance with a prearranged time schedule, then adopted a plan of complete liquidation of Producing. In furtherance of that plan, Producing sold to Gulf for a consideration of $40,816,858.80 all its assets except cash in the amount of $60,150,000.00 and a production payment in the primary sum of $80,000,000.00, reserved by Producing out of the producing oil and gas properties conveyed to Gulf. Following the sale of assets to Gulf, Producing, also on July 28, 1966, distributed to the plaintiff Chared cash in the amount of $102,544,000.00 and the reserved production payment in the primary sum of $80,000,000.00. On the security of the production payment, Chared then borrowed from several lending institutions a total amount of $80,000,000.00. The cash of $102,544,000.00 and the borrowing of $80,000,000.00 equalled the purchase price paid of $182,544,000.00. It is, therefore, apparent that BA never repaid Producing the $60,150,000.00 advances, except on paper on the same day Producing was liquidated.

21. Considering the relationship of the parties and all of the facts and circumstances of the transactions, the advances in question were in truth and substance dividends and were so intended by the parties. It was never intended that the notes evidencing the advances be unconditional obligations of BA.

22. The Court finds that Producing failed to file a proper withholding tax return for the dividends herein determined to have been paid by Producing to BA, that Producing had reasonable cause to fail to file proper returns, and that its failure so to file was not due to neglect. In filing these returns as it did, taxpayer did so in good faith in the exercise of ordinary business care and prudence in reliance on the advice of tax experts, who had been supplied with all the necessary and relevant information.

23. Producing failed to file proper withholding tax returns, in that such returns did not report any payment of dividends to foreign residents or state a claim of no liability for withholding tax on any such dividends. Treas.Reg. § 1.1461–2(b) (1957).

24. The returns filed did not put the Internal Revenue Service in a position to discover the tax or audit the returns.

## CONCLUSIONS OF LAW

1. Any finding of fact hereinabove made which also constitutes a conclusion of law is adopted as a conclusion of law. Any conclusion of law herein made which also constitutes a finding of fact is hereby adopted as a finding of fact.

2. The advances in question by Producing to BA were taxable dividends, which were subject to the withholding tax on dividends paid to foreign corporations. Wiese v. Commissioner of Internal Revenue, 93 F.2d 921 (8 Cir.), cert. denied, 304 U.S. 562, 58 S.Ct. 944, 82 L.Ed. 1529 (1938).

3. Plaintiff, having failed to file a proper withholding tax return for the years in question, is not entitled under the facts and evidence in this record to the defense (dropped during the trial) of the statute of limitations, and the Government is not barred from the taxes assessed. Int.Rev.Code of 1954, § 6501 (c) (3); United States v. Bailey, 383 F.2d 9 (5 Cir. 1967); McDonald v. United States, 315 F.2d 796 (6 Cir. 1963); Hulette v. United States, 315 F.2d 826 (6 Cir. 1963).

4. Producing was entitled to rely upon its tax expert, a partner in an international accounting firm.

5. The delinquency penalty of 25% (Int.Rev.Code of 1954, § 6651) was illegally assessed, and the Government is not entitled to claim the 5% deficiency penalty (Int.Rev.Code of 1954, § 6653) for negligence or intentional disregard of the rules and regulations of the Internal Revenue Code.

6. The taxpayer, Chared, is entitled to judgment for recovery of the penalty assessed under Int.Rev.Code of 1954, § 6651, together with interest at the rate of 6% as provided by law.

7. The advances in question having been found to be dividends, the interest equalization tax (Int.Rev.Code of 1954, § 4911) does not apply.

SIGNED AND ORDERED ENTERED, this the 30th day of June, 1969.

s/ Joe E. Estes
UNITED STATES DISTRICT JUDGE