Carolyn KIISKILA, Plaintiff-Appellant,

v.

Edwin A. NICHOLS, Clark Clifford, and Headquarters Fifth Army Credit Union, Defendants-Appellees.

No. 17580.

United States Court of Appeals, Seventh Circuit.

Aug. 3, 1970.

Kenneth K. Howell, Chicago, Ill., for plaintiff-appellant.

William J. Bauer, Thomas A. Foran, U. S. Attys., Michael B. Cohen, Asst. U. S. Atty., Chicago, Ill., for defendants-appellees; John Peter Lulinski, Michael B. Nash, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, and KILEY, FAIRCHILD, CUMMINGS, and KERNER, Circuit Judges.

SWYGERT, Chief Judge.

Plaintiff, Carolyn Kiiskila, brought this action to test the validity under the first and fifth amendments of an order issued by defendant, Colonel Edwin A. Nichols, permanently excluding her from Fort Sheridan Military Reservation. The district court denied Kiiskila's motion for a preliminary injunction restraining enforcement of the exclusion order and granted summary judgment for the defendants. On appeal this court affirmed the district court's ruling with one judge dissenting. Subsequently, we granted plaintiff's petition for rehearing en banc. We reverse and order that plaintiff be readmitted to Fort Sheridan.

The facts are not in dispute. Carolyn Kiiskila is a civilian who was employed at the Fort Sheridan Military Reservation as office manager of a credit union. She is a former WAC and a member of Veterans for Peace in Vietnam. As part of its efforts to achieve peace in Vietnam, Veterans for Peace seeks to inform members of the armed forces of their legal rights and to solicit their support for the peace movement.

On October 26, 1968 the Veterans for Peace scheduled a rally for service personnel in Chicago. On October 23 Kiiskila in a casual conversation on the post mentioned the rally to a Lieutenant O'Neal. She informed him that she would be chairwoman at the rally and gave him a ticket to attend the meeting.

On October 24 plaintiff distributed literature concerning the rally at locations near, but not on, the Great Lakes Naval Station. That evening she returned to Fort Sheridan accompanied by a serviceman. Upon entering the post she was stopped by military police. Her car was searched and about fifty pounds of anti-Vietnam war literature were discovered in the trunk. Much of the literature allegedly had been in Kiiskila's car for several months. Plaintiff was interrogated and then escorted off the base.

On October 28 Colonel Nichols, the commanding officer at Fort Sheridan, issued an order permanently excluding Kiiskila from the post. No hearing was held prior to the issuance of his order. The purported basis for plaintiff's exclusion was that "on or about 24 October

1968 [Kiiskila] engaged in conduct prejudicial to good order and discipline and the accomplishment of my military mission." In the district court Colonel Nichols testified that he issued the exclusion order because he concluded from events occurring on October 23 and October 24 that plaintiff "would attempt to distribute this literature on the post in violation of Fort Sheridan Regulation 27–1." Regulation 27–1 prohibited "Picketing, demonstrations, sit-ins, protest marches, political speeches, and similar activities."

As a result of plaintiff's exclusion from the post she was unable to perform her duties and her employment was terminated. Her civilian employers stated that they dispensed with her services "with reluctance" and only because the "military authorities have made it impossible to retain her."

The district court, relying primarily upon Cafeteria and Restaurant Workers Union, Local 473, AFL–CIO v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), held: (1) that Colonel Nichols was empowered to exclude Kiiskila from the base without a hearing; (2) that the failure to provide a hearing did not violate due process; and (3) that plaintiff's exclusion from the base did not violate her rights under the first amendment. We are not convinced that the *Cafeteria Workers* case necessarily compels the conclusion that Colonel Nichols was empowered to exclude plaintiff from Fort Sheridan without a hearing [1] and that the absence of a hearing comports with due process under the fifth amendment.[2] We need not decide these questions, however, since we grant the full relief requested by plaintiff on the ground that her exclu-

1. Absent explicit authorization, a military commander may not exclude a civilian employee from a military installation without a hearing. Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Greene v. McElroy, 360 U.S. 474, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959). In the *Cafeteria Workers* case authorization to exclude plaintiff from the Naval Gun Factory was based upon plaintiff's contract and a Navy regulation which provided in part:

> The responsibility of the commanding officer for his command is absolute, except when, and to the extent relieved therefrom by competent authority or as otherwise provided in these regulations.
> \* \* \* \* \*
> In general, dealers or tradesmen or their agents shall not be admitted within a command, except as authorized by the commanding officer.

Authorization to exclude plaintiff without a hearing rested upon this regulation plus the "historically unquestioned power of a commanding officer summarily to exclude civilians from the area of his command," Cafeteria & Restaurant Workers Union v. McElroy, *supra* 367 U.S. at 893, 81 S.Ct. at 1747. In the instant case power to exclude Kiiskila from Fort Sheridan rests upon a regulation issued by the Secretary of Army pursuant to 10 U.S.C. § 3012(g) which provides:

> (d) *Entry, exit, and personal search*
> The installation commander will establish appropriate rules governing the entry of persons upon and exit from, the installation, and the search of persons and their possessions as limited below. 32 C.F.R. § 552.18(d).

This regulation may be read to require the promulgation of written rules by each base commander to govern exclusion in cases other than the violation of game laws or post regulations. *See* 32 C.F.R. § 552.18(d)(2). Since Colonel Nichols has not issued regulations of this type, there is significant question whether he is empowered to exclude Kiiskila under the facts of this case.

2. In holding that the failure to provide a hearing was consistent with due process, the Supreme Court in Cafeteria & Restaurant Workers Union v. McElroy, *supra* 367 U.S. at 888, 896, 81 S.Ct. 1743, relied heavily upon the fact that Rachel Brawner had been offered employment by her civilian employer at facilities other than the Naval Gun Factory. In the instant case the record indicates that Kiiskila has been deprived of the opportunity to work for her civilian employer in any capacity and not merely of "the opportunity to work at one isolated and specific military installation." Cafeteria & Restaurant Workers Union v. McElroy, *supra* at 896, 81 S.Ct. at 1749. As a result of this fact the weighing of private versus governmental interests required by due process may be somewhat different in this case.

sion from Fort Sheridan and the concomitant loss of her civilian employment violated her rights to freedom of speech and association under the first amendment.

## I

Defendants assert at the outset that plaintiff's first amendment rights are not involved in this case since "she is in no way prohibited from continuing her activities [against the war in Vietnam]; all she is prohibited from doing is entering Fort Sheridan." This statement echoes Mr. Justice Holmes' assertion that "[t]he petitioner may have a constitutional right to talk politics, but he has no constitutional right to be a policeman." McAuliffe v. Mayor of New Bedford, 155 Mass. 216, 220, 29 N.E. 517 (1892). As we shall demonstrate, broad assertions of this sort do not constitute an appropriate standard for determining constitutionality and in fact serve only to obfuscate required analysis and consideration of competing private and public interests.[3] In analyzing the questions involved in the instant case we must, therefore, define carefully the interest of plaintiff deprived by Colonel Nichols' order and avoid denominating it by conclusionary characterizations such as right or privilege.

The interests of plaintiff affected by defendants' actions extend considerably beyond her access to Fort Sheridan. She was employed at a credit union on the base. In permitting the credit union to operate at Fort Sheridan, the Army undoubtedly contemplated that access to the base would be required by civilian employees including Kiiskila. Moreover, it also must have been aware that termination of a civilian employee's access to the base would result in the loss of his employment. Thus, in terms of the interests of both plaintiff and the Army, the exclusion order in this case is essentially equivalent to dismissal of a person from government employment. Cafeteria & Restaurant Workers Union v. McElroy, *supra* at 896, 81 S.Ct. 1743.[4] When so viewed, plaintiff's claim that her exclusion was predicated on her antiwar activities demands careful scrutiny under the first amendment.

The constitutionality under the first amendment of discharge from public employment depends ultimately upon weighing the interests of the individual against those of the state. In such an equation particularly great emphasis must be placed upon the interest of society in encouraging free exchange of ideas. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L. Ed.2d 811 (1968); United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L. Ed.2d 508 (1967); cf. Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). That interest was best described by the Supreme Court in New York Times Co. v. Sullivan, 376 U.S. 254, 270, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964), as "a profound national commitment to the principle that debate on public issues be uninhibited, robust and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." An essential corollary of this principle is that a citizen is permitted, and even expected, to criticize policy decisions of his government. This includes expressions in opposition to national foreign policy in Vietnam. Bond v. Floyd, *supra* 385 U.S. at 132, 87 S.Ct. 339. Indeed, because plaintiff is a former WAC and because she comes into personal contact with many members of the armed forces, her criticism of military policy may be especially valued by

---

3. *See generally* W. Van Alstyne, The Demise of the Right-Privilege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439 (1968).

4. Therefore, we need not consider or decide whether there are circumstances in which a civilian employed at a military installation can be temporarily denied access to the base if his job is not jeopardized as a result. Similarly we need not decide whether a civilian not employed on the base could be excluded for the reasons present in this case.

society. *Cf.* Pickering v. Board of Education, *supra* 391 U.S. at 572, 88 S.Ct. 1731. Citizen criticism may be expressed in many forms including, as in this case, distribution of literature to military personnel outside of military installations. *Cf.* Martin v. City of Struthers, 319 U.S. 141, 146–147, 63 S. Ct. 862, 87 L.Ed. 1313 (1943). As part of the right to engage in criticism of governmental policy, citizens also must be permitted to assemble and join together in groups to achieve their objectives. This protected right of association includes membership in groups such as Veterans for Peace, organized solely to encourage opposition to governmental policy. United States v. Robel, *supra* 389 U.S. at 263, 88 S.Ct. 419; *cf.* Cafeteria & Restaurant Workers Union v. McElroy, *supra* 367 U.S. at 898, 81 S.Ct. 1743.

 A citizen's right to engage in protected expression or debate is substantially unaffected by the fact that he is also an employee of the government and, as a general rule, he cannot be deprived of his employment merely because he exercises those rights. This is so because dismissal from government employment, like criminal sanctions or damages, may inhibit the propensity of a citizen to exercise his right to freedom of speech and association. Pickering v. Board of Education, *supra* 391 U.S. at 574, 88 S.Ct. 1731. To protect society's interest in uninhibited and robust debate the first amendment demands that government be prohibited from inhibiting or suppressing speech by indirection through discharge of a government employee when the same objective could not constitutionally be achieved by criminal sanctions or other direct means. United States v. Robel, *supra*.

 We think the facts of this case entitle plaintiff to protection under these principles. Kiiskila's activities on October 24, including leafletting near the Great Lakes Naval Station and carrying antiwar literature in her car formed the primary basis of Colonel Nichols' order. As we have previously demonstrated, these are activities and forms of expression in which every citizen is free to engage. Secondary emphasis is also placed upon Kiiskila's casual conversation with Lieutenant O'Neal at Fort Sheridan on October 23, 1968. We reject defendants' argument that this conduct constitutes a violation of Regulation 27–1. The reference to "similar activities" in that regulation must be interpreted in light of preceding words describing proscribed activities. Thus, we hold casual conversations are too dissimilar to picketing, demonstrations, sit-ins, protest marches, and political speeches to fall within the prohibition of Regulation 27–1. The conversation occurring on October 23 is, therefore, also conduct in which a citizen is ordinarily free to engage.[5] As a result we are convinced that the defendants used plaintiff's status as a civilian employee at Fort Sheridan to discourage plaintiff and others like her from exercising their rights. In the absence of an overwhelming countervailing state interest peculiarly pertaining to plaintiff's job at Fort Sheridan, we think her exclusion from the base and the concomitant loss of her job are unconstitutional under the first amendment.

II

Although defendants' arguments are far from clear, they appear to present two related theories to establish the requisite state interest needed to sustain plaintiff's exclusion. Both theories rest upon the premise that the principles previously stated are subject to exception in this case because of the need for military discipline in order to preserve an effective national defense posture. The first theory would distinguish the instant case from public employment cases on the basis that plaintiff's job is per-

---

5. In light of our interpretation of Regulation 27–1 we need not consider or decide whether or to what extent the Army could constitutionally limit the content of casual conversations or discussions by civilians on military bases.

formed inside a military installation. Defendants have failed to present evidence to demonstrate that military discipline is actually affected by plaintiff's presence on the base or even by her antiwar activities. Nor have defendants presented evidence to show that plaintiff is in any way subject to military discipline herself. Their assertion is instead, a broad claim that undefined military and national defense considerations are sufficient to permit the government to infringe plaintiff's rights to freedom of speech and association.[6] In United States v. Robel, *supra* 389 U.S. at 263–264, 88 S.Ct. at 423, the Supreme Court rejected a similar argument interposed by the Government to justify the loss of petitioner's job at a defense plant on the basis of his membership in the Communist party. There the Court noted: "[T]he phrase 'war power' cannot be invoked as a talismanic incantation to support any exercise of congressional power which can be brought within its ambit. '[E]ven the war power does not remove constitutional limitations safeguarding essential liberties.' Home Bldg. & Loan Assn. v. Blaisdell, 290 U.S. 398, 426, 54 S.Ct. 231, 78 L.Ed. 413 (1934). * * * It would indeed be ironic if, in the name of national defense, we would sanction the subversion of one of those liberties —the freedom of association—which makes the defense of the nation worthwhile." In the absence of a showing by defendants to distinguish this case from *Robel* we think plaintiff's rights may not be threatened or curtailed by the defendants' own unsupported assessment of the requirements of national defense.

A second theory is that government may deprive a person of public employment if speech by that person impairs his ability to carry out his job. This question was expressly reserved in Pickering v. Board of Education, *supra* 391 U.S. at 569–570, 88 S.Ct. 1731; *cf.* Lefcourt v. Legal Aid Society, S.D.N.Y., 312 F.Supp. 1105 (May 11, 1970). We are of the view, however, that this exception is inapplicable in the instant case since the content of Kiiskila's criticism and expression does not refer directly to matters intimately concerned with her employment, her job superiors, or coworkers. In any event we need not decide that question here since defendants have failed to present evidence, except for broad assertions by Colonel Nichols concerning morale and discipline, to establish proof under this theory.

### III

■ Defendants make one final argument to support their position. According to this contention Colonel Nichols excluded plaintiff not because of her antiwar activities but because of his fear that she would engage in similar conduct on the base in violation of Regulation 27–1. Such assertions must be viewed with caution for as the Supreme Court recently noted in Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 508, 89 S.Ct. 733, 737, 21 L.Ed.2d 731 (1969): "[I]n our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Thus, unless we are to permit the deprivation of constitutional rights through subterfuge, the validity of a commanding officer's exclusion of a civilian employee from a military installation must turn upon more than his own subjective statements of the reason for his action.

In previous cases exclusion has been supported by substantial evidence in the record. In Cafeteria & Restaurant Workers Union v. McElroy, *supra* 367 U.S. at 898, 81 S.Ct. 1743, the Supreme Court held that plaintiff's exclusion was "entirely rational" since she was a security risk whose presence on the base produced reasonable fears of sabotage and espionage. Similarly in Weissman v. United States, 387 F.2d 271 (10th Cir. 1967), plaintiff was properly excluded

---

6. We, of course, intimate no views concerning the extent to which the interests of military discipline and national defense permit government to infringe on the freedom of speech and association of members of the armed services.

for disrupting a court martial proceeding, conduct which if it had occurred at Fort Sheridan would violate Regulation 27–1.[7] In the instant case, however, defendants do not contend that plaintiff is a security risk or even that she has violated a post regulation. Instead, they merely assert that her conduct off the base gives rise to an inference that she will engage in similar and, presumably unprotected, activities on the base.

We are not prepared to say that off-the-base conduct can never be considered in determining the validity of an exclusion order. It is now well established, however, that constitutional guarantees of free speech and association do not permit the government to forbid or proscribe speech or other protected conduct unless that conduct is directed to inciting or producing imminent lawless action. Bradenburg v. Ohio, 395 U.S. 444, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969). We think a similar principle applies in this case. Thus we hold that protected first amendment conduct may not be considered in determining the likelihood that plaintiff will violate post regulations unless that conduct directly and imminently foreshadows proscribed on-the-base activity.

When this standard is applied in the instant case it is evident that defendants' argument must fail and that plaintiff's exclusion was unlawful.[8] Never in the past has plaintiff distributed literature on Fort Sheridan or any other military base and the record is devoid of statements by Kiiskila or others in Veterans for Peace indicating an intent to do so in the future.

The sole conduct by plaintiff, relating to activity proscribed by Post Regulation 27–1 if conducted on military bases, was the October 24 leafletting outside Great Lakes Naval Station. That activity was too far removed in terms of both distance and time to directly and imminently foreshadow proscribed activity inside Fort Sheridan. Finally, we note that much of the antiwar literature discovered on the evening of October 24 had allegedly been in the trunk of Kiiskila's car for many months and had not been distributed on the base. Defendants have failed to disprove these allegations. Thus, all of the evidence when taken together gives rise to a nearly conclusive inference that plaintiff never intended to violate Regulation 27–1.

Accordingly, the judgment is reversed and the district court is directed to enter an order readmitting plaintiff to Fort Sheridan.

KILEY, Circuit Judge (specially concurring).

I concur in the result reached in Judge Swygert's opinion, but I prefer to base my concurrence on the basis that the Commander's order barring plaintiff from the Fort was too drastic and violated the principle of proportionality. Where the Commander's purpose of preserving good order and discipline could be fulfilled by measures short of infringing First Amendment freedoms, the infringing measure should not be sustained. Here I think that a warning or a technical suspension of plaintiff's privilege of access would probably have sufficed. See Keyishian v. Board of Regents, 385 U.S. 589, 602, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

If the word "subterfuge" used on page 8 of the majority opinion implies that Colonel Nichols' reason for the order was not his expressed fear, but rather his dislike of plaintiff's anti-Vietnam

---

7. The *Weissman* case is, of course, not controlling here since the plaintiffs excluded in that case were not civilian personnel employed on the base.

8. We need not decide whether temporary exclusion rather than permanent denial of access to the base would be the appropriate remedy if this test were satisfied. *See* Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

war views, I think that the record does not support the implication.

KERNER, Circuit Judge (concurring).

I concur in the opinion of the majority. However, I agree with Judge Kiley that a warning by the Commander would have been sufficient to prevent Miss Kiiskila from disrupting base activities.