**David E. ROTH, for himself and for all others similarly situated, Plaintiff-Appellee,**

v.

**The BOARD OF REGENTS OF STATE COLLEGES and Roger E. Guiles, Defendants-Appellants.**

**No. 18490.**

United States Court of Appeals, Seventh Circuit.

July 1, 1971.

E. L. Wingert, Madison, Wis., Charles A. Bleck, Asst. Atty. Gen., Robert W. Warren, Atty. Gen. of Wisconsin, Madison, Wis., for defendants-appellants.

Steven H. Steinglass, Milwaukee, Wis., Robert L. Reynolds, Jr., Madison, Wis., for plaintiff-appellee and for Wisconsin Civil Liberties Union; Charles D. Hoornstra, Michael W. Smith, Madison, Wis., of counsel.

Albert E. Jenner, Jr., Chester T. Kamin, Richard T. Franch, Chicago, Ill., amici curiae, Board of Governors of State Colleges and others; Jenner & Block, Chicago, Ill., Richard T. Dunn, Dunn, Dunn, Brady, Goebel, Ulbrich & Hayes, Bloomington, Ill., of counsel.

Richard L. Cates, Robert C. Kelly, Bruce F. Ehlke, Lawton & Cates, Madison, Wis., David Rubin, Deputy General Counsel, National Education Ass'n, for National Education Ass'n and Wisconsin Education Ass'n, amici curiae.

Before DUFFY, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

FAIRCHILD, Circuit Judge.

In this case (involving an official decision at a state university not to reemploy a non-tenured professor) the parties each made motions for summary judgment. The district court decision is reported at 310 F.Supp. 972. Defendants' motion was denied, and plaintiff's motion was granted in part. The order appears on pages 983 and 984. Defendants have appealed from the judgment accordingly entered. Although such judgment did not finally dispose of all issues, and no direction was made under Rule 54(b) F.R.Civ.P., it amounted to an injunction and was appealable as such under 28 U.S.C. § 1292(a) (1).

The facts, the disposition of the motions, and the reasoning employed are well stated in the opinion of the district court, and we shall avoid unnecessary repetition. It suffices, now, to say that during the school year '68–'69, plaintiff was a non-tenured professor at a state university who claimed (1) that the rea-

son for defendants' decision not to retain him for the school year '69–'70 was to retaliate for plaintiff's constitutionally protected expression of opinion and (2) that even as a non-tenured member of the faculty he was constitutionally entitled either to be retained or to be given a hearing on the merits of the decision not to retain him.

With respect to issue (1), which may be termed substantive, the district court decided there were issues of fact. Such issues have not been determined and the respective claims concerning them are before us only as background. With respect to issue (2), which may be called procedural, the district court decided that plaintiff had been entitled at the administrative level to be offered a statement of the reasons why he was not to be retained and a hearing at which he could respond. Accordingly, the court ordered defendants to deliver the statement and provide for the hearing, or, in the alternative, to offer a contract for the ensuing school year. By the time of the decision the upcoming school year was '70–'71. The district court stayed its order pending appeal, and the upcoming school year is now '71–'72.

The district court made it clear that the prescribed procedure was designed to safeguard a due process right that "the decision not to retain a professor employed by a state university may not rest on a basis wholly unsupported in fact, or on a basis wholly without reason," and that the "standard is intended to be considerably less severe than the standard of 'cause' as the latter has been

applied to professors with tenure." (p. 979.)

Defendants do not question the proposition, documented by the district court at page 976, that the "employment of a teacher in a public school cannot be terminated because he has exercised that freedom secured to him by the Constitution of the United States." They would say that the proposition (which they deny) that reemployment was denied plaintiff because of his exercise of protected rights is for him to prove, if he is able, in the branch of this case which is not now before us.

The contest on this appeal is whether the state university, in deciding not to retain a non-tenured professor, must initially shoulder the burden of exposing to the limited test ordered by the district court the reasons on which its decision is predicated, and to that extent demonstrate that its reasons are not impermissible, or whether the first recourse of the professor is to attempt to establish in the judicial forum that the reasons are impermissible.

Defendants rely on the traditional principle "that government employment, in the absence of legislation, can be revoked at the will of the appointing officer." [1]

*Cafeteria Workers,* [2] involved denial by government of an individual's access to a government facility, resulting in inability to continue private employment at that facility. Although the Supreme Court suggested that the individual's interest in access to her job was closely analogous to the interest of a govern-

1. Cafeteria and Restaurant Workers, etc. v. McElroy (1961), 367 U.S. 886, 896, 81 S.Ct. 1743, 1749, 6 L.Ed.2d 1230, citing Vitarelli v. Seaton (1959), 359 U.S. 535, 539, 79 S.Ct. 968, 3 L.Ed.2d 1012. Those decisions did not involve teachers, but the principle was assumed in Shelton v. Tucker (1960), 364 U.S. 479, 486, 81 S.Ct. 247, 5 L.Ed.2d 231, involving state university as well as public school teachers, and has been followed in other decisions involving non-tenured teachers. Jones v. Hopper (10th Cir., 1969), 410 F.2d 1323, 1329, cert. den. 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399; Freeman v. Gould

Special Sch. Dist. of Lincoln County, Ark. (8th Cir. 1969), 405 F.2d 1153, 1159, cert. den. 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93; Williams v. School District of Springfield R–12 (Mo., 1969), 447 S.W.2d 256, 270; Henry v. Coahoma County Board of Education (N.D.Miss., 1963), 246 F.Supp. 517, 521, aff'd 5th Cir., 353 F.2d 648, cert. den. 384 U.S. 962, 86 S.Ct. 1586, 16 L.Ed.2d 674; Hopkins v. Wasson (E.D.Tenn., 1962), 227 F.Supp. 278, aff'd, 6th Cir., 329 F.2d 67, cert. den. 379 U.S. 854, 85 S.Ct. 102, 13 L.Ed.2d 57.

2. Supra, fn. 1.

ment employee in retaining his job, and in that connection stated the principle relied on by defendants, the Court also held that "consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." This was the balancing formula which the district court applied in the instant case, reaching a result different from the result in *Cafeteria Workers*.[2a]

The opinion in *Cafeteria Workers* itself suggests that if the government action jeopardized a right to follow a chosen trade or profession, that fact would weigh upon the side of the individual. In Goldberg v. Kelly[3] the Supreme Court referred generally to relevant constitutional restraints applying to discharge from public employment, among other types of government action, and after stating that "The extent to which procedural due process must be afforded the recipient is influenced by the extent to which he may be 'condemned to suffer grievous loss,' * * * and depends upon whether the recipient's interest in avoiding that loss outweighs the governmental interest in summary adjudication," quoted the balancing language from *Cafeteria Workers*. The Supreme Court has held that one who applies for a license to practice a profession is entitled to procedural safeguards not required in *Cafeteria Workers* "where only 'the opportunity to work at one isolated and specific military installation' was involved."[4] Several courts have found a due process right where dismissal or non-retention of a public employee jeopardized an interest in practicing a profession, or in preserving a professional reputation.[5] We think the district court properly considered the substantial adverse effect non-retention is likely to have upon the career interests of an individual professor and concluded, after balancing it against the governmental interest in unembarrassed exercise of discretion in pruning a faculty, that affording the professor a glimpse at the reasons and a minimal opportunity to test them is an appropriate protection.

We note that the Supreme Court has denied certiorari in several cases where a court of appeals has declined to recognize similar due process rights of an elementary or secondary public school teacher who has been dismissed or not re-employed.[6] On the other hand, the Supreme Court has emphasized the importance of vigilant protection of constitutional freedoms in the academic community.[7] "Moreover, in the case of teachers, the government's interest goes beyond the promotion of fairness to the encouragement of an academic atmosphere free from the threat of arbitrary treatment."[8]

**2a.** *See* Kiiskila v. Nichols (7th Cir., 1970), 433 F.2d 745.

**3.** (1970), 397 U.S. 254, 262, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287.

**4.** Willner v. Committee on Character & Fitness (1963), 373 U.S. 96, 103, footnote 2, 83 S.Ct. 1175, 1180, 10 L.Ed.2d 224.

**5.** Birnbaum v. Trussell (2d Cir., 1966), 371 F.2d 672, physician employed at a municipal hospital; Meredith v. Allen County War Memorial Hospital Com'n (6th Cir., 1968), 397 F.2d 33, physician on staff of county hospital; Lucia v. Duggan (D.Mass., 1969), 303 F.Supp. 112, public school teacher; Orr v. Trinter, 318 F.Supp. 1041 (S.D.Ohio, 1970), public school teacher. See also, the dissenting opinion of Judge Lay in *Freeman*, supra n. 1, 405 F.2d pages 1161, 1164.

**6.** *Jones, Freeman, Henry*, and *Hopkins*, supra, fn. 1. The Court has however, recently granted certiorari in a case in this field: Sindermann v. Perry (5th Cir., 1970), 430 F.2d 939, cert. granted 1971, 403 U.S. 917, 91 S.Ct. 2226, 29 L.Ed.2d 694.

**7.** Shelton v. Tucker (1960), 364 U.S. 479, 487, 81 S.Ct. 247, 5 L.Ed.2d 231, quoting from Wieman v. Updegraff (1952), 344 U.S. 183, 195, 73 S.Ct. 215, 97 L.Ed. 216, and Sweezy v. New Hampshire by Wyman (1957), 354 U.S. 234, 250, 77 S.Ct. 1203, 1 L.Ed.2d 1311.

**8.** Developments-Academic Freedom (1968), 81 Harvard Law Rev. 1045, 1082.

The instant case arose after serious disturbance on that particular campus, and public expressions by plaintiff of his opinions, critical of the administrators. It appeared, after discovery in this action, that these expressions were considered by defendants, albeit in a context of supposed relevancy to his performance of his duties. Although the principle announced by the district court applies by its terms to all non-retention decisions, an additional reason for sustaining application in the instant case, and others with a background of controversy and unwelcome expressions of opinion, is that it serves as a prophylactic against non-retention decisions improperly motivated by exercise of protected rights.[9]

The judgment appealed from is affirmed.[10] Necessarily our affirmance does not deprive the district court of power to modify the judgment so as to make adjustments for the passage of time or circumstances which have arisen since its entry.

DUFFY, Senior Circuit Judge (dissenting).

I respectfully dissent. I agree with the statement in one of the amicus curiae briefs submitted in this case that "Affirmance of the judgment below * * * will constitute an unprecedented and unwise incursion of the federal courts into the domain of public higher education."[1] In holding that under the Wisconsin statutory provision which permits the contracts of probationary instructors to expire at the "pleasure" of the university, it must now include a statement of reasons and the opportunity for a hearing, the majority calls into question a practice that is well established and is customary at more than one thousand public schools and universities in this country, which have some three hundred thousand faculty members and over six million students. (Amicus brief, at 2–3). I do not believe that the procedural protections now called for by the majority opinion are required by the Constitution or will they prove to be effective protections in fact.

Plaintiff, David Roth, never had been employed in the state university system before he signed a contract to teach at Wisconsin State University, Oshkosh, for the 1968–69 academic year. This was his first teaching job. The contract was for one year only and it is clear that under the Wisconsin Statutes (Wis. Stats. Sec. 37.31(1)) the contract carried with it no further express or implied promise of continued employment. Moreover, the statute did not provide for a statement of reasons or a hearing in the event that the contract of a probationary instructor such as Roth was not renewed for the following year. This is to be contrasted with the situation of a tenured faculty member who could only be dismissed "for cause", which includes, by definition, certain procedural protections such as the right to a statement of reasons and a hearing.

The tenure system in effect at Wisconsin State University-Oshkosh is typical of college tenure systems throughout the United States. In Wisconsin, the tenure system for colleges and universities is adopted by statute. (Wis.Stats. Sec. 37.-31(1)). A decision not to grant tenure ordinarily is embodied in a notice of contract non-renewal.

Consistent with customary procedure at the University, the decision not to re-

9. See Van Alstyne, Right-Privilege Distinction (1968), 81 Harvard Law Rev. 1439, 1453.

10. Since this opinion adopts a position concerning which a conflict appears to exist between the circuits, the majority and dissenting opinions have been circulated, before filing, to all the judges of this court in regular active service. The proposition that the appeal be reheard en banc failed to receive the support of a majority, four voting in favor and four opposed.

1. Brief of the Board of Governors of State Colleges and Universities of Illinois, the Board of Regents of Regency Universities of Illinois, the Board of Trustees of Southern Illinois University, the American Association of State Colleges and Universities, The American Council on Education and the Association of American Colleges, p. 3.

hire plaintiff Roth was made by President Guiles alone. However, the President then had before him the recommendation of the Tenure Committee of the Department of Political Science, the Dean of the School of Letters and Science and the Vice President for Academic Affairs. All of these recommended that plaintiff not be reemployed.

The Board of Regents can reverse a decision of the President of the University. However, Roth did not appeal to the Board. Instead, he filed the complaint in the District Court under 42 U. S.C. § 1983 from which this appeal is taken. His stated reason for this course of action was that the Federal Court "is the only entity to be trusted for a fair hearing." [2]

Roth's complaint alleged first, that he was entitled to a statement of reasons and a hearing on the question of his nonrenewal, and secondly, that the reason his contract was not renewed stemmed from his choosing to exercise his rights guaranteed by the Constitution.

However, as indicated in the majority opinion, this second and "substantive" ground for relief was kept separate from the procedural argument now before us. The District Judge granted partial summary judgment in favor of plaintiff solely on the ground that, as a matter of procedural due process, the defendants must give plaintiff a written statement of the reasons on which they relied in deciding not to reemploy him, and to offer him a hearing within a specfied time at which he could reply to the stated reasons, or, in the alternative, that defendants offer plaintiff a contract for the up-coming academic years.

I

It is my personal opinion that the decision of the District Court is both unwise and unworkable. What troubles me especially is that the result of the decision might well be to make the Federal Courts the final arbiters of all similar cases. The majority opinion calls for a hearing before a state administrative body at which time difficult questions of constitutional law might well be presented. Administrative bodies of this sort are not qualified to pass on such questions. A person who feels he has been unjustly refused a renewal of his teaching contract certainly will not be satisfied with the result of such a hearing, if it be adverse to him. He will, quite naturally, seek relief in the federal courts and, once having reached that forum, will feel free to ignore all the proceedings that have transpired before. Indeed, that appears to have been the attitude of the plaintiff in the case before us as indicated by his statement that the Federal Court was "the only entity to be trusted for a fair hearing."

On the other hand, the state will not be so free to ignore the results of such hearings but will, instead, be required to incur a great expense to provide them in the first place. In undertaking the balancing test of the "precise nature of the government function involved as well as of the private interest that has been affected by governmental action" called for in Cafeteria and Restaurant Workers, etc. v. McElroy, 367 U.S. 886 at 895, 81 S.Ct. 1743 at 1748, 6 L.Ed.2d 1230, I do not think that either the District Judge or the majority here placed sufficient weight on the burden to be borne by the State in providing these hearings. We may note that as a result of very rapid growth, the faculties of most colleges and universities contain a high percentage of young and untested teachers. Moreover, it also has been pointed out to us that the seller's market in teaching talent has changed to a buyer's market, and that we may well expect that universities will take this opportunity to upgrade their younger faculties by extensive substitutions as better qualified applicants become plentiful. The result, obviously, will be that a much greater number of non-tenured teachers will be notified that their contracts have not been renewed than has been true in the past. As illustration of the fact that

2. Roth deposition, page 27.

this trend already has begun we note, from appellant's brief, that for 1970 alone, 206 non-tenured teachers of the Wisconsin State University system were notified that they would not be retained. Clearly, it will be a significant burden for the State to hold hearings on the difficult questions involved in non-renewal decisions even if not all of those teachers demand that a hearing be held.

I further feel that the procedures ordered by the District Court and approved of by the majority here will be almost impossible to administer and certainly will not render any easier the task of federal courts in their assessment of whether or not any substantive constitutional freedoms have been impinged. Decisions over whether or not to rehire a probationary instructor are exceedingly difficult to make; are based on various combinations of personal judgments, and are no easier to review. Under the majority's holding, administrative bodies will be compelled to review these personal judgments while possessing no expertize in the ultimate constitutional claims at issue. We shall then be called upon to conduct a second review of a, no doubt, already confusing set of facts. Our task may end up being both unmanageable and futile.[3]

The majority opinion states that the hearing is called for in part as a "prophylactic" against infringement of constitutional freedoms, yet it is difficult to see how such proceedings will assist the process in any appreciable manner. If, in fact, certain educational bodies may sometimes act out of ill will in rendering non-renewal decisions (a proposition which I do not so readily accept), they clearly will not be deterred by any procedures approved of by this Court.

The tenure system, which has been carefully worked out throughout the years, has, at its root, the requirement that a tenured professor can only be dismissed for "cause." The assessment of whether, in fact, cause exists has traditionally included the affording of certain procedural safeguards, such as those now before us. On the other hand, non-tenured personnel has traditionally not been accorded these same protections, and they have known that this was so when they took their jobs. The majority opinion purports not to disturb that carefully worked out distinction, yet, in my view, such will be the end result.

## II

Aside from my own personal views on the matter, I wish to point out that the majority opinion goes far beyond the present state of the law and, in fact, now places this Circuit in direct conflict with two other Circuits in this area of the law. Of course, I recognize that a university may not, consistent with the Constitution, take retaliatory action against one of its employees just because that employee has chosen to exercise his rights guaranteed to him by the Constitution. Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and McLaughlin v. Tilendis, 398 F.2d 287 (7 Cir. 1969). But that is not what is involved here. We deal instead with what procedures must be followed by a university when indicating to a probationary instructor that he will not be rehired for the following year.

Procedural due process is a totally separate area from the protection of substantive constitutional rights and, as the Supreme Court has indicated—"The Fifth Amendment does not require a trial-type hearing in every conceivable case of governmental impairment of private interest." Cafeteria and Restau-

---

3. On the difficulty in assessing rehiring decisions see: F. Machlup "On Some Misconceptions Concerning Academic Freedom" in Academic Freedom and Tenure, at pp. 185-6. On the problems of judicial review of school cases in general see Judge Lay's dissent in Esteban v. Central Missouri State College, 415 F.2d 1077 (8 Cir. 1969).

rant Workers, etc. v. McElroy, *supra,* 367 U.S. at 895, 81 S.Ct. at 1748. But even acknowledging that the flexible standard of procedural due process may sometimes require the affording of a hearing and other minimal protections when life and liberty are at stake, Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287, Hahn v. Burke, 430 F.2d 100 (7 Cir., 1970), cert. den. 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868 (1971), that does not mean that the majority's result is required. For, as I read the majority opinion, it now becomes the first opinion to require that these procedures be mandated to a probationary instructor whose contract is not renewed yet, who admittedly, has made no further substantive allegation of infringement of constitutional freedoms.

It is clear that nothing in any of the Supreme Court decisions compels the majority's result here. If anything, the Court has assumed the constitutionality of the tenure process, and its corollary, the dismissal of non-tenured faculty members without notice, hearing or statement of reasons even as the Court, at the same time, has been vigilant to protect *substantive constitutional freedoms.* This was exactly the case in *Shelton, supra,* where the Court struck down an Arkansas statute which impinged on teachers' freedom of association. Yet, in so doing, the Court noted by contrast that "such interference with personal freedom is conspicuously accented when the teacher serves at the absolute will of those to whom the disclosure must be made— those who any year can terminate the teacher's employment without bringing charges, without notice, without a hearing, without affording an opportunity to explain." (364 U.S. p. 486, 81 S.Ct. p. 251). While the infringement on the freedom of association was condemned, the validity of the very procedures before us now was assumed.

The validity of the procedures before us now was directly challenged in two other Circuit Court cases. Yet, in each case, the dismissal or non-renewal of a probationary instructor's contract, with-

out a statement of reasons or without a hearing, was held to pass the scrutiny of the due process clause, and in each case, the Supreme Court denied certiorari. Jones v. Hopper, 410 F.2d 1323 (10 Cir., 1969) cert. den. 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970); Freeman v. Gould Special School District, 405 F.2d 1153 (8 Cir., 1969), cert. den. 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (Justice, then Judge Blackmun, a concurring member of the panel). In response to the same procedural due process argument as advanced here, the Freeman Court stated: "if this were so [if the argument were accepted] we would have little need of tenure or merit laws as there could only be, as argued by the plaintiffs, a discharge for cause, with the school board carrying the burden of showing that the discharge was for a permissible reason." (at p. 1160). Yet, the majority here rejects the *Freeman* and *Jones* holdings, calls into question the validity of the tenure system, and places this Circuit squarely in conflict with the Eighth and Tenth Circuits.

I wish to emphasize that the majority opinion now requires that universities comply with the procedures established by the District Court order, even when there is absolutely no indication of any infringement of the constitutional rights of the teacher in question. In so doing, the majority opinion becomes unique unto itself. I realize that there have been those decisions which have called for a hearing or similar procedures in school cases, but these have arisen only when there has been an allegation of serious infringement of other constitutional rights. Ferguson v. Thomas, 430 F.2d 852 (5 Cir., 1970); Lucas v. Chapman, 430 F.2d 945 (5 Cir., 1970); Hopkins v. Wasson, D.C., 227 F.Supp. 278, affd. 329 F.2d 67 (6 Cir., 1964), cf. Meredith v. Allen County War Mem. Hosp. Comm'n, 397 F.2d 33 (6 Cir., 1968). In each of those decisions, the allegation of an infringement of substantive constitutional rights was recognized as critical by the Court before a hearing would be held to be required. Indeed, the *Lucas*

Court took pains to point out its holding "should not be misunderstood", that the hearing was required only when "the asserted reason for termination involved a possible collision with * * * First Amendment rights." (430 F.2d at p. 947). As mentioned before, I have grave doubts as to the practical workability of such a distinction, but even conceding that it should be noted that the majority now goes beyond those cases to hold that a university must "shoulder the burden" in *all* cases, even in those situations where there is no allegation of infringement of First Amendment rights.

That such is the majority's holding is indicated at the outset of its opinion, further, in the statement on page 810 that the holding "applies by its terms to all non-retention decisions", and from an examination of the proceedings in the District Court. (310 F.Supp. at 982–983). If plaintiff Roth did have a *bona fide* claim of infringement of his First Amendment rights, he deliberately has held that claim in abeyance in another "branch" of the case in order to establish, as a matter of law, the requirement of the procedural protections before us now. I think that this Court's acceptance of that format for argument has resulted in the unnecessary decision of a constitutional question which has been doubly unfortunate in that it has resulted in this Circuit going far beyond any other case in this area. It is puzzling that the Court has been willing to do this for in one of the very cases cited as support by the majority, we indicated our preference to decide only those constitutional issues necessary to resolve the controversy. In Kiiskila v. Nichols, 433 F.2d 745, en banc (1970), this Court held that a civilian

employee had been improperly excluded from a military reservation because of her expression of anti-war views. In that case, the requirement that a hearing be given was urged upon this Court. Even though the Court expressed some doubt as to whether the employee could be so excluded without the opportunity for a hearing (p. 747, n. 2) we deliberately stated that we "need not decide" that question because the case could be resolved otherwise. I think that such a practice should have been followed by the District Judge in the case at bar with, perhaps, the consequence that such a wide reaching and unsettling result would not have been reached.

In my view, the State's interest in preserving a workable system of tenure which includes, almost by definition, the ability to select freely and maturely its non-tenured teaching personnel, far outweighs any expectancy which the plaintiff David Roth might have had in continued employment at Wisconsin State University.[4] I believe that the teaching of Cafeteria and Restaurant Workers, etc. v. McElroy, *supra,* supports this view especially when the great burden this Court's holding will present for states is considered. I further believe that the majority's holding is both unprecedented and represents an unwarranted intrusion of the Federal Judiciary into state educational systems. It is one thing to recognize that "The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools" (*Shelton,* 364 U.S. at page 487, 81 S.Ct. at page 251), and that "It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the

---

4. It is interesting to note that Roth signed his one year teaching contract presumably with full knowledge of the Wisconsin Statute (Wis.Stat.Ann.Sec. 37.31) which does not provide for a hearing or statement of reasons in the event that his contract was not renewed. On the other hand, in Birnbaum v. Trussell, 2 Cir., 371 F.2d 672, relied upon heavily by the majority, it appears that there was some pre-existing state requirement that a hearing be provided for physicians who were to be discharged. While this factor by itself cannot, of course, be determinative, due to the Supremacy Clause, it is clear that Roth's "expectancy" in continued employment and in the procedures to be followed in terminating that employment differed sharply from that of Dr. Birnbaum. On other distinctions between the expectancies of teachers as opposed to physicians, see *Freeman, supra,* 405 F.2d at 1160.

schoolhouse gate" (Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) but it is quite another to hold that anxiety over hypothetical infringements of unknown constitutional freedoms demands that states accord the full panoply of procedural due process guarantees for those teachers whose services they designate as no longer required.

We should follow the decision in Freeman v. Gould Special School District, *supra*, where the Court held that probationary instructors whose contracts were not renewed, were not entitled to a hearing with notice.

I respectfully dissent.