Jerry A. SHIELDS, Plaintiff,

v.

Albert A. WATREL, President of Slippery Rock State College, et al., Defendants.

Civ. A. No. 71–676.

United States District Court,
W. D. Pennsylvania.

Nov. 2, 1971.

Marjorie H. Matson, Matson & Rothman, Pittsburgh, Pa., for plaintiff.

Richard L. Kelly, Asst. Atty. Gen., Joseph J. Pass, Sp. Asst. Atty. Gen., Pittsburgh, Pa., for defendants.

## OPINION

TEITELBAUM, District Judge.

This is an action brought under 28 U. S.C. § 1343(3) alleging a contravention of the Civil Rights Act of 1871, specifi-

cally 42 U.S.C. § 1983.[1] Procedurally, the plaintiff's application for a preliminary injunction and request for a permanent injunction have been merged, the testimony and exhibits offered at the hearing held on the former comprising all of the evidence on the latter.

The plaintiff, Jerry A. Shields, was an Assistant Professor of English at Slippery Rock State College. He began teaching at Slippery Rock in August, 1967, and was rehired annually through August, 1970. In August, 1970, while he was rehired for the school year 1970–1971, he was notified that he would not be rehired for the following school year, 1971–1972. In other words, his 1970–1971 contract was to be his "terminal contract".

The plaintiff charges that the termination of his employment was occasioned by his participation, during the school year 1969–1970, in demonstrations in protestation of the American involvement in Indochina and the student deaths at Kent State University, and concludes that the termination therefore represents impermissible retribution for his exercise of rights protected by the First and Fourteenth Amendments. Alternatively, the plaintiff suggests that he was entitled to an administrative hearing before his employment was terminated and that the failure of the Slippery Rock officials to afford him a hearing was transgressive of the Fifth and Fourteenth Amendments. In sum, by this action the plaintiff seeks to have himself either reinstated or afforded an administrative hearing.

 Preliminarily, the defendants have moved to dismiss the action for failure to state a cause of action upon which relief may be granted. I think, however, that it is well settled that the employment of a public school professor, instructor, or teacher may not be termi-

nated for his exercise of constitutionally protected rights. Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Roth v. Board of Regents, 446 F.2d 806 (7th Cir. 1971); Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970); Pred v. Board of Public Instruction, 415 F.2d 851 (5th Cir. 1969); Greene v. Howard University, 134 U.S.App.D.C. 81, 412 F.2d 1128 (1969). Further, as stated in Roth v. Board of Regents, 310 F.Supp. 972 (D.C. W.D.Wis.1970), aff'd. 446 F.2d 806 (7th Cir. 1971).

> "[T]his substantive constitutional protection is unaffected by the presence or absence of tenure * * *. Johnson v. Branch, 364 F.2d 177 (4th Cir. 1966), cert. den. 385 U.S. 1003 [787 S.Ct. 706, 17 L.Ed.2d 542] * * *. Nor is it material whether employment is terminated during a given contract period, or not renewed for a subsequent period. McLaughlin v. Tilendis [398 F.2d 287 (7th Cir. 1968)]."

Too, it is clear that the termination of the plaintiff's employment was "state action". If he proves, then, that his employment was terminated because he exercised rights protected by the First and Fourteenth Amendments, the plaintiff may be granted relief. Therefore, the defendants' motions to dismiss must be denied.

Factually, however, the plaintiff has failed to sustain his burden of proof. When he was hired in August, 1967, the underlying assumption was that he would shortly secure his Ph.D. degree in English. It is undisputed that by Au-

---

1. "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the depriva- tion of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

gust, 1970, when the "terminal contract" was issued, he had not secured his degree.[2] Nor is it disputed (1) that Slippery Rock reduced the number of "billets" or openings in its English Department from 29½ for the school year 1970–1971 to 26 for the school year 1971–1972; (2) that while initially Mr. Shields taught mostly advanced courses in English, he has recently been teaching mostly basic courses, particularly Freshman English, or English 101; and (3) that as a result of a policy change, English 101 is to be substantially discontinued for the school year 1971–1972.

■ Notwithstanding these facts, Mr. Shields contends that his employment was terminated because he exercised his First Amendment right of free speech. He testified that in October, 1969, he participated in a Vietnam moratorium-demonstration, speaking on non-violent civil disobedience. He testified further that in May, 1970, he actively participated in both the planning and staging of a demonstration in protestation of the incursion of the United States military into Cambodia and the student deaths at Kent State. From these facts and the facts (1) that the two other English professors whose employment was terminated in August, 1970, were among those with whom the plaintiff planned and staged the demonstrations of May, 1970 (presumably peaceful) and (2) that only seven of the twenty-eight professors and instructors comprising the English Department in August, 1970, had more seniority than the plaintiff, the plaintiff inferentially theorizes that his employment was terminated because of his First Amendment activities. The testimony of the defendants, Albert Watrel, James Roberts and Albert Schmittlein, however, convincingly refutes the threshold of that theory. Each testified that at the time of the issuance of the "terminal contract" he was totally unaware of Mr. Shields' First Amendment activities, including Mr. Shields' participation in the demonstrations surrounding the incursion into Cambodia and the student deaths at Kent State. Moreover, the recommendation that the plaintiff's employment be terminated originated (August 8, 1970) with the then Chairman of the English Department. Thus the preponderance of the evidence does not support the plaintiff's contention. Having failed to sustain his burden of proof, his claim that his employment was terminated because of his First Amendment activities must fall.

Alternatively, Mr. Shields contends that procedurally he was entitled to an administrative hearing before his employment was terminated. The circuits seem to be at odds as to this. While the Fifth[3] and Seventh[4] Circuits have held that procedural due process entitles a non-tenured public school teacher[5] to an administrative hearing, the Eighth[6] and Tenth[7] Circuits have held that due process does not require a hearing prior to the dismissal or non-renewal of a non-tenured teacher. It is significant, however, that the Supreme Court denied petitions for a writ of certiorari from both of the latter decisions. Although the Third Circuit has not had occasion to deal with the question in the context of state teachers, it has held that a probationary state hospital employee is not entitled to an administrative hearing

---

2. In fact, he had not secured his degree by August, 1971, when the hearing on his application for a preliminary injunction was held.

3. Lucas v. Chapman, 430 F.2d 945 (5th Cir. 1970).

4. Roth v. Board of Regents, 446 F.2d 806 (7th Cir. 1971).

5. "Teacher" here is used loosely and generally to mean educators from university professors to grammar school teachers, there being for present purposes no legal distinction.

6. Freeman v. Gould Special School District, 405 F.2d 1153 (8th Cir. 1969), cert. den. 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed. 2d 93 (1969).

7. Jones v. Hopper, 410 F.2d 1323 (10th Cir. 1969), cert. den. 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed.2d 399 (1970).

prior to discharge. In Grausam v. Murphey, 448 F.2d 197 (3rd Cir. 1971), the rule of due process was stated to be "one of fairness under the circumstances" and to involve "a balancing of the interests of the employee and the government". The balance there between the interest of a probationary hospital worker in maintaining his employment and of the state hospital in maintaining orderly and efficient administration was struck in favor of the administration of the hospital.

■ As a non-tenured professor, Mr. Shields is essentially a probationary state employee. Too, the analogy extends to the state which has an important interest in staffing its state colleges and universities with the most competent available professors. Indeed, that interest would seem to underlie the traditional system of tenure. To infringe upon the discretion of the state higher education officials in deciding which of its non-tenured professors or instructors should be retained and which should be released by requiring an administrative hearing for every release would be to unnecessarily burden the administration of the state higher education system. Certainly the state must be free to exercise its discretion, indeed its duty, to retain or grant tenure only to those professors and instructors who in the unfettered judgment of the state officials merit retention or tenure without having to endlessly record reasons for terminating the employment of those who are not retained or granted tenure. Otherwise, the courts would clothe all untenured teachers with the important incidents of tenure and thereby emasculate the system. Moreover, a non-tenured professor is not left without a forum for complaint, for if he thinks the termination of his employment to be for constitutionally impermissible reasons, resort may be had to the courts. In the circumstances of this action, including those of the non-tenured status of Mr. Shields and the year-in-advance notice of his termination, I find that the interest of the state outweighs that of the plaintiff, and conclude that procedural due process does not require an administrative hearing.

This opinion includes the findings of fact and conclusions of law required by F.R.C.P. 52.