Richard W. HOSTROP, Plaintiff,

v.

**BOARD OF JUNIOR COLLEGE DIS-
TRICT NO. 515 et al., Defendants.**

No. 71 C 147.

United States District Court,
N. D. Illinois, E. D.

Feb. 1, 1972.

James Pappas, Chicago Heights, Ill.,
for plaintiff.

Anthony Scariano, Chicago Heights,
Ill., for defendants.

## MEMORANDUM OPINION

AUSTIN, District Judge.

This is a suit brought pursuant to the
first, fourth, fifth, and fourteenth
amendments to the United States Consti-
tution and 42 U.S.C. 1981 et seq. Plain-
tiff is a former chief administrative of-
ficer of Prairie State College and de-
fendants are members of the board of
the college district, who terminated
plaintiff's employment. They are sued
individually and as a corporate body.

Before the court is defendants' motion
for summary judgment, which the court

believes should be considered more properly as a motion to dismiss for failure to state a claim upon which relief can be granted. Filed with the court are plaintiff's amended complaint (a prior motion to dismiss having been granted), defendants' motion, two affidavits on behalf of the defendants, and memoranda submitted by both sides. In their memoranda both sides refer to depositions, but none have been submitted to this court.

In his complaint plaintiff alleges that he was fired because of an administrative staff memorandum in which he made recommendations for changes in the Ethnic Studies Program. The memorandum was intended to be confidential, but it is alleged that it was made public by someone other than plaintiff. He contends that his first amendment rights were violated since he was fired solely because of his memorandum and that his fifth and fourteenth amendment rights were violated because he was not given a hearing. This court finds that as a matter of law plaintiff has raised no constitutional claims and therefore the complaint is dismissed for failure to state a claim.

The most recent Supreme Court case concerning the first amendment rights of public school employees is Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). In that case plaintiff, a high school teacher, sued the board after he was fired for sending to a local newspaper a letter that was critical of the way in which the school board and the superintendent handled proposals to raise revenue. The Court held that unless he knowingly or recklessly made false statements, a teacher could not be dismissed from public employment as a result of his speaking on issues of public importance. The Court noted, however, that factors not present in that case could result in a different finding:

> The statements [made by plaintiff] are in no way directed towards any person with whom appellant would normally be in contact in the course of his daily work as a teacher. Thus no question of maintaining either discipline by immediate superiors or harmony among co-workers is presented here. Appellant's employment relationships with the Board and, to a somewhat lesser extent, with the superintendent are not the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning.

Id. at 569–570, 88 S.Ct. at 1735.

\* \* \* \* \* \*

> It is possible to conceive of some positions in public employment in which the need for confidentiality is so great that even completely correct public statements might furnish a permissible ground for dismissal. Likewise, positions in public employment in which the relationship between superior and subordinate is of such a personal and intimate nature that certain forms of public criticism of the superior by the subordinate would seriously undermine the effectiveness of the working relationship between them can also be imagined.

Id. at 570 n. 3, 88 S.Ct. at 1735.

While none of the parties nor this court have found a case as the instant one involving a school administrator rather than a teacher, if the above-quoted exception drawn by the Supreme Court is to have any application, this court believes it must be in a case such as the one now before it.

■■ According to the employment contract between plaintiff and defendant board, plaintiff agreed to "abide by all rules, regulations and directions issued by the Board in carrying out the duties of his position . . ." as chief administrative officer of the college. The nature of the position of a college president is such that the board must have the "confidence" in and the "personal loyalty" of the president. In order for the working relationship between them to be effective the right of a president to make public statements or to dis-

agree with the board may have to be limited. Therefore, assuming that the memorandum which became public was the basis for plaintiff being fired,[1] this court finds that this is the type of case envisioned by the Court when it drew the exception in *Pickering* and that the plaintiff thus has no first amendment rights that were violated.

This court further finds that plaintiff has raised no due process rights that would entitle him to notice of charges and a hearing at which he could rebut them. The Supreme Court has held that interests must be considered to decide what due process rights an individual has:

> [C]onsideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action.

Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). In that case the Court held that a cook at a cafeteria operated by a private concessionaire in a military gun factory could be excluded from the factory for reasons of security without being given a hearing. The Court noted that it "has consistently recognized that an interest closely analogous to [petitioner's], the interest of a government employee in retaining his job, can be summarily denied." *Id.* at 896, 81 S.Ct. at 1749.

Thus, in light of *Cafeteria Workers* this court must undertake a balancing of interests to decide what, if any, procedural due process rights may be guaranteed to plaintiff by the United States Constitution. Since, as mentioned above, no case involving a school administrator has been found by the parties, they have cited to this court cases involving non-tenured teachers.

Both parties have argued that the recent case of Roth v. Board of Regents, 446 F.2d 806 (7th Cir. 1971), affirming 310 F.Supp. 972 (W.D.Wis.1970), cert. granted, 404 U.S. 909, 92 S.Ct. 227, 30 L.Ed.2d 181 (Oct. 26, 1971) supports their positions. In *Roth* plaintiff was a non-tenured assistant professor at a state university. After being informed that his one year contract would not be renewed, he sued, alleging that he was not offered another contract because of his expressions of opinion allegedly protected by the first and fourteenth amendments. In deciding whether plaintiff had any due process rights the trial court undertook the balancing test enunciated in *Cafeteria Workers*. While noting that a university should have "considerable latitude" in deciding whether a probationary teacher should remain and that it should have "available a very wide spectrum of reasons, some subtle and difficult to articulate and to demonstrate, for deciding not to retain a newcomer . . .," the court found in favor of the plaintiff. The court stated that the university had no interest in a regime which made a decision wholly without support in fact. The interest of the plaintiff in jeopardy was his academic career. The court found that the balancing test compelled the conclusion that under the due process clause the decision not to retain a state university non-tenured professor may not rest on a basis wholly unsupported in fact or on a basis wholly without reason. 310 F.Supp. at 978–979. The university was ordered to give reasons why plaintiff was not retained and

---

1. It is not necessary to decide whether the memorandum in question was distributed privately or publicly and if publicly, whether it was done by plaintiff or someone else. If it was public it falls within the exception established in *Pickering*, and if private, the first amendment is not drawn into question, and moreover, the state can limit private debate where it is detrimental to the functioning of a public body. See e. g., Lefcourt v. Legal Aid Society, 312 F.Supp. 1105, 1113 (S.D.N.Y. 1970).

to give plaintiff a hearing at which he could respond to those reasons.

The Court of Appeals affirmed, 446 F.2d 806, 809 (7th Cir. 1971) holding that

the district court properly considered the substantial adverse effect non-retention is likely to have upon the career interests of an individual professor and concluded, after balancing it against the governmental interest in unembarrassed exercise of discretion in pruning a faculty, that affording the professor a glimpse at the reasons and a minimal opportunity to test them is an appropriate protection.

The court acknowledged that other circuits have declined to recognize such rights,[2] but went on to point out that the Supreme Court has emphasized the importance of vigilant protection of constitutional freedoms in the academic community, citing Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960).

■ This court does not think that there need be the same "vigilant protection" when an administrator is involved as may be necessary when a teacher is. The need for teachers to have freedom in what they teach arises from the very heart of the first amendment. The workshop of the administrator, however, is not the classroom but the office and the conference room. His primary duties are to coordinate, delegate, and regulate, not to educate. The fact that he is the "executive officer *of the board* . . ." Ill.Rev.Stat. ch. 122, § 103–26 (Supp.1972) (emphasis added) illustrates the need for, and in fact the intention of the legislature for, a close working relationship between him and the board. The public retains control of the school system by electing the

board, Ill.Rev.Stat. ch. 122, § 103–7 (Supp.1972), which in turn must manage and govern the college. Ill.Rev.Stat. ch. 122, § 103–25 (Supp.1972). It does this through the chief administrative officer.

Thus, the considerations before this court are not the same as those before the courts in *Roth*. It is true that, as with *Roth*, the plaintiff's career may be harmed by his dismissal. The court acknowledges that if the dismissal was for reasons that had no factual basis, the college community as a whole is harmed by a reduction in respect for the board and other administrators and perhaps by a loss of good teachers as a result. Against these considerations, however, is the fact that the policies of the board, a publicly elected body, are carried out through the chief administrative officer. The board must therefore have wide discretion in deciding whether to hire or fire a person who will be or has been in essence its agent. The discretion, naturally, is not unlimited, but Illinois law prohibits the most obvious forms of constitutionally prohibited discrimination: that based on sex, race, color, creed or national origin. Ill.Rev.Stat. ch. 122, § 103–26 (Supp.1972).

■ Just as the Supreme Court has recognized that the first amendment may have restricted application where "close working relationships" are involved (*Pickering*, 391 U.S. at 569–570, 88 S.Ct. 1731, 20 L.Ed.2d 811), so also this court believes that the due process clause of the fourteenth amendment must be limited in application to those types of relationships in public employment.

This court finds that this plaintiff has no first amendment or due process rights which have been violated in re-

2. 446 F.2d at 809. The circuits are divided on the question. In Orr v. Trinter, 444 F.2d 128 (6th Cir. 1971), the court used the balancing test and concluded that a non-tenured teacher had no due process rights because of the board's interest in free and independent action with re-

spect to his employment. The Fifth Circuit, however, found that a non-tenured teacher must be given a hearing if he requests it. Sindermann v. Perry, 430 F. 2d 939 (5th Cir. 1970), cert. granted, 403 U.S. 917, 91 S.Ct. 2226, 29 L.Ed.2d 694 (1971).

gard to his public employment. The complaint is dismissed for failure to state a claim upon which relief can be granted.