118 N.J. Super. 398 (1972)
288 A.2d 43
LEONARD KATZ AND NANCY KATZ, PLAINTIFFS,
v.
BOARD OF TRUSTEES OF GLOUCESTER COUNTY COLLEGE AND WILLIAM L. APETZ, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided February 29, 1972.
*399 Mr. William S. Greenberg for plaintiffs (Messrs. Sterns & Greenberg, attorneys).
Mr. Martin F. Caulfield for defendants. (Messrs. Hannold, Caulfield & Zamal, attorneys).
WICK, J.S.C.
This case is the result of a decision of the Gloucester County College Board of Trustees not to renew the teaching contract of plaintiff Leonard Katz for a fourth year, the granting of which would have carried plaintiff into tenured status under New Jersey law. N.J.S.A. 18A:60-1 et seq. Suit has been instituted against the board and President William L. Apetz in his official capacity seeking the reinstatement of Katz as a member of the faculty with tenure and such other relief as may be just and equitable. It is alleged that defendants' determination violated the plaintiff's rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, and more particularly his *400 rights of association "without fear of penalty or reprisal" conferred by Article I, paragraph 19 of the New Jersey Constitution, as implemented by N.J.S.A. 34:13A-1 et seq. Defendant board is further charged with violation of N.J.S.A. 18A:64A-12(f) and 18A:64A-13. Plaintiff has abandoned the third count of his complaint seeking damages for his wife's nervous condition allegedly attributable to defendants. Defendants deny the allegations of the complaint.
Plaintiff joined the Gloucester County College faculty in September 1968. He taught various courses in the Social Sciences Department for three years, progressing in rank from lecturer to instructor. During this period he organized and became first president of the Gloucester County College Faculty Association; he remained an active member thereafter, serving in various capacities, including salary negotiator for the faculty. He was also elected to the presidency of the Association of New Jersey County College Faculties. His extracurricular involvement included coaching the cross country team, advising the student government, chaperoning various student functions, and counseling (on an unofficial basis) students hopeful of continuing their education beyond the county college's two-year program.
Voluminous testimony has been adduced from numerous witnesses regarding Katz' abilities as a teacher. Several of his former students and Dr. Leonard Krivy, a former administrator at the college, found him knowledgeable and even inspiring; various administrative personnel expressed some dissatisfaction with his techniques; the board of trustees had little or no first-hand knowledge.
At a public meeting on January 25, 1971, following an executive session of the board, it was announced that Katz would not be awarded a contract for the academic year 1971-1972, his tenure year. N.J.S.A. 18A:60-2. The board had discussed the matter on at least two occasions before making its announcement. The decision was made on the recommendation of President Apetz, who had consulted with Dean of Instruction Joseph V. Summers and plaintiff's departmental *401 chairman, Michael D. Lindner. Both of these latter two individuals had personally observed and evaluated plaintiff's classroom abilities during 1970. In the six months preceding the board's decision several meetings between the administration and plaintiff had been held, at which certain suggestions for improving his effectiveness as a teacher were discussed.
No reason was given Katz for the board's determination; no hearing was afforded him to face his accusers. At trial it was testified that in addition to teaching ability, the administration had expressed to plaintiff its concern regarding his attire, tardiness, absences and parking habits.
Prior to trial two motions were made by defendants. The first was to dismiss the complaint for failure to state a cause of action and failure to exhaust administrative remedies. By letter opinion of March 15, 1971 we denied the motion in view of the possible constitutional issues involved.
Subsequently, on July 9, 1971, the court granted defendants' motion for a protective order, whereby the scope of plaintiff's discovery was limited to the extent that he could not ask the board members or other college personnel questions regarding the reason(s) for his nonretention. Further, and relatedly, plaintiff was denied any access to the executive sessions of the Board insofar as they pertained to his nonretention.
We are asked today to determine whether, as plaintiff alleges and has sought to prove, the nonretention of Katz, a nontenured college instructor at a state institution, violated his rights under the United States Constitution, the New Jersey Constitution, or statutes implementing the latter.
It can no longer be maintained that teachers "shed their constitutional rights to freedom of speech at the school-house gate." Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Their exercise of First Amendment rights will generally not warrant their dismissal. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 *402 (1967); Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); McLaughlin v. Tilendis, 398 F.2d 287 (7 Cir.1968). Furthermore, in the absence of some illegal intent, a person's right to join or form a union is protected by the First Amendment. Thomas v. Collins, 323 U.S. 516, 65 S.Ct. 315, 89 L.Ed. 430 (1944). The protection afforded has been held to be unaffected by the presence or absence of tenure. McLaughlin v. Tilendis, supra; Johnson v. Branch, 364 F.2d 177 (4 Cir.1966), cert. den. 385 U.S. 1003, 87 S.Ct. 706, 17 L.Ed.2d 542 (1967); Bomar v. Keyes, 162 F.2d 136 (2 Cir.1947), cert. den. 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947).
Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960), is clear authority for the proposition that teachers enjoy the right of free association, and that the unjustified interference therewith violates the due process clause of the Fourteenth Amendment. Our own Supreme Court has recently stated, in Burlington Cty. Evergreen Park Mental Hospital v. Cooper, 56 N.J. 579 (1970), a case involving the termination of a public hospital employee, that
Denial of permanent status to an employee solely because she had engaged in her constitutional or statutory right to join or to persuade other employees to join a union clearly would be arbitrary and illegal conduct by an employer. [at 583]
See also, Zimmerman v. Board of Education, Newark, 38 N.J. 65 (1962), cert. den. 371 U.S. 956, 83 S.Ct. 508, 9 L.Ed.2d 502 (1963). Implementing Article I, paragraph 19 of the New Jersey Constitution, N.J.S.A. 34:13A-5.3 provides in part:
Except as hereinafter provided, [exceptions irrelevant], public employees shall have, and shall be protected in the exercise of, the right, freely and without fear of penalty or reprisal, to form, join or assist any employee organization or to refrain from any such activity; * * *. *403 There can be no question but that plaintiff, an employee of a state educational institution, comes within the meaning of the cited enactment. Porcelli v. Titus, 108 N.J. Super. 301 (App. Div. 1969), cert. den. 55 N.J. 310 (1970). Thus, under the United States Constitution, the New Jersey Constitution, New Jersey statute and judicial decisions, a public school teacher's nonretention based solely on the exercise of lawful union activity or other First Amendment rights would be unlawful state action.
While the law may be simply stated, its application to the instant controversy is more difficult. We have heard numerous witnesses testify; in our deliberation since trial we have carefully reviewed the record to find substantiation for plaintiff's claim. We are unable, however, to find any concrete evidence in the proofs to support a determination that Katz' termination was a "penalty" or "reprisal" resulting from his faculty association activity, or that his substantive constitutional rights were in any way infringed. True, he was very vocal in his faculty association positions; it is through individuals such as Katz that teachers today enjoy rights only dreamed of a few decades ago. His role as faculty leader and, more particularly, salary negotiator may well have generated some friction with members of the board of trustees. But we cannot find, invoking any standard of culpability, that his activism caused his nonretention or that the board was motivated by the vindictive spirit ascribed to them by plaintiff. As against plaintiff's claim, we have heard the testimony of Lindner, plaintiff's departmental chairman, and Dean Summers, both of whom observed and evaluated plaintiff in class. Both stated that, in their opinion, Katz was deficient in certain areas as a teacher. This was related to Katz and generated several conferences aimed at his self-improvement. We have no doubt that the situation, known by Dr. Apetz, was made known to the board for their deliberation. Nor can the court question the judgment of plaintiff's superiors; these men are highly trained educators and education administrators. It is not the function of this *404 court to question their judgment, to become a super administrator, in the absence of a far greater prima facie showing of neglect on their part.
What has been said heretofore poses a more troublesome issue: assuming the existence of certain constitutional rights, the exercise of which will not justify a teacher's termination, is a nontenured teacher entitled to a statement of reasons and/or a hearing before he may be lawfully dismissed. Zimmerman v. Board of Education, Newark, 38 N.J. 65 (1962), cert. den. 371 U.S. 956, 83 S.Ct. 508, 9 L.Ed.2d 502 (1963), exhaustively cited by defendants for the negative of this proposition, states
And except to the extent of constitutional or statutory limitations, there is no legal duty on the part of a board to re-employ a teacher at the end of a contract term. [at 75]
It is fairly clear that Zimmerman did not decide the issue posed. In that case the reasons for dismissal were given. Chief Justice Weintraub's concurring opinion demonstrates the point:
The Legislature intended wide latitude in the employing authority to determine fitness for permanent employment. It is clear that public employment may not be refused upon a basis which would violate any express statutory or constitutional policy. A simple example would be discrimination for race or religion. But I am not sure such specific limitations are the only restraints. If the employing agency, for an absurd example, thought blonds were intrinsically too frivolous for permanent employment, a court would find it difficult to withhold its hand.
But if we may inquire into `unreasonableness,,' it would seem to follow that there must be a `reason,' i.e. `clause' for refusal to continue the teacher into a tenure status. That course has its difficulties. It would not mean the court would not recognize a wide range of `reasons' or would lightly disagree with the employer's finding that the `reason' in fact existed. But it would follow that upon demand the teacher would be entitled to a statement of the grounds, with the right to a hearing and to a review as to whether the grounds are arbitrary in nature or devoid of factual support. * * * Such individual inquiries could involve some practical problems in the administration of a school system.
*405 I think the question might well be left for another day, since here the reason was given and I cannot say it is arbitrary in nature or unfounded in fact. [at 80]
There is no allegation that plaintiff "demanded" an explanation; we are not sure, however, that this would be crucial to the existence of the right. If such right does exist, then this court was clearly in error with regard to the protective order that issued on defendant's motion.
In the recent case of Donaldson v. Board of Education, North Wildwood, 115 N.J. Super. 228 (App. Div. 1971), the court held that a nontenured teacher has no right to a statement of reasons for the nonrenewal of his contract or a hearing before the board, subject to the constitutional guarantee against discrimination. In so holding it was stated (at 228) that "Zimmerman v. Board of Education, Newark, 38 N.J. 65 (1962), is dispositive of this issue," and that a teacher has no right to reemployment. In view of our discussion above, we respectfully submit that Zimmerman is not proper authority for the holding, nor is the statement that plaintiff had no right to reemployment dispositive, i.e., none will claim that the fact that a nontenured teacher has no right to reemployment will justify a dismissal because he happens to be black.
The precise issue has not yet been resolved by either our Supreme Court or the United States Supreme Court. The various Circuit Courts that have considered the issue are widely split. Some cases have extended what we will term "procedural due process" to nontenured teachers in all cases of dismissal, while others say that no such right exists. There are variations in between. See, as illustrative of the various views, Roth v. Board of Regents of State Colleges, 446 F.2d 806 (7th Cir.1971); Orr v. Trinter, 444 F.2d 128 (6 Cir. 1971), (appeal pending); Drown v. Portsmouth School District, 435 F.2d 1182 (1 Cir.1970); Jones v. Hopper, 410 F.2d 1323 (10 Cir.1969), cert. den. 397 U.S. 991, 90 S.Ct. 1111, 25 L.Ed. 2d 399 (1970); *406 Thaw v. Board of Public Instruction, 432 F.2d 98 (5 Cir.1970); Sindermann v. Perry, 430 F.2d 939 (5 Cir.1970), cert. granted 403 U.S. 917, 91 S.Ct. 2226, 29 L.Ed.2d 694 (1971); Freeman v. Gould Special School District, 405 F. 2d 1153 (8 Cir.1969), cert. den. 396 U.S. 843, 90 S.Ct. 61, 24 L.Ed.2d 93 (1969); Bomar v. Keyes, 162 F.2d 136 (2 Cir.1947), cert. den. 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947).
Perhaps the most notable of those cases expanding the rights of nontenured teachers is Roth v. Board of Regents of State Colleges, supra, a situation closely analogous to that presented herein. Essentially, it held that a nontenured teacher may not be terminated without being accorded a statement of reasons and a hearing. In so ruling great emphasis was placed upon Cafeteria and Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961), which involved the denial of access to a naval installation to a short-order cook who had worked there. The result was the loss of her job. The court held that the governmental action was lawful and that, under the circumstances, a statement of grounds for exclusion and a hearing were not constitutionally mandated. The method of decision is particularly important: First, the court recognized that plaintiff's due process argument could not be neutralized by the fact that she had no constitutional right to be there initially. However, the court noted that in every case of government impairment of private interests, due process does not require a trial-type hearing and that there must be a degree of flexibility here. And it stated, further, that
* * * consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by government action. [367 U.S. at 895, 81 S.Ct. at 1748]
Applying this balancing formula, the court held that plaintiff's interest in this specific job, as distinguished from loss *407 of her profession, was outweighed by the governmental interest as proprietor in administering the internal affairs of the base.
In Roth, and in a number of other recent cases, this same mode of analysis has been applied, but the balance has been struck in favor of the teacher, i.e., the private interest. In so doing it has been concluded that a teacher who is not retained loses more than just a specific job; he loses opportunity to pursue his profession effectively and professional esteem. The governmental interest, it is stated, in totally free and independent action with respect to the employment of nontenured teachers is less important. Accordingly, it was held that due process required a hearing and statement of reasons. In the same breath the Roth court conceded that the tenure system had a rational basis that would not be disturbed by its decision.
We agree that the balancing process used in Cafeteria Workers is perhaps the proper approach; we disagree with the result reached in Roth. We fail to understand how the tenure system, which is the legislatively enacted policy of New Jersey and which was approved inferentially in Shelton v. Tucker, supra, can long co-exist alongside the procedures promulgated in Roth.
Under N.J.S.A. 18A:60-1 a teacher or professor at a New Jersey educational institution shall, after serving for a specified period of time, be "under tenure during good behavior and efficiency." No such person shall be dismissed "except for inefficiency, incapacity, conduct unbecoming a teacher, or other just cause," N.J.S.A. 18A:60-2, and then only after being afforded a hearing and written statement of charges pursuant to N.J.S.A. 18A:6-10 et seq. To hold that plaintiff, a nontenured teacher, is entitled to a statement of reasons and a hearing is, in our opinion, tantamount to the abolition of a central feature of the tenure system, i.e. nontenure status. Chief Judge Duffy, in his dissenting opinion on the appeal in Roth, supra, well expressed our concern:
*408 The tenure system, which has been carefully worked out throughout the years, has, at its root, the requirement that a tenured professor can only be dismissed for `cause'. The assessment of whether, in fact, cause exists has traditionally included the affording of certain procedural safeguards, such as those now before us. On the other hand, non-tenured personnel has traditionally not been accorded these same protections, and they have known that this was so when they took their jobs. The majority opinion purports not to disturb that carefully worked out distinction, yet, in my view, such will be the end result.
The majority in Roth believe that their holding will not upset the tenure system  there would just be a wider spectrum of allowable reasons available for the nonretention of nontenured teachers than for tenured teachers. See District Court opinion in Roth, 310 F. Supp. 972, 978-979 (D.C.E.D. Wis., 1970). While the idea possesses a simplistic attractiveness, in my view it is unwise, unworkable, costly, and against our public policy. Generally speaking, a board of education or board of trustees is just not equipped to make the type of hairline distinctions necessitated. And what would the end result be? Either the grounds for dismissal of tenured teachers would be relaxed to the detriment of the tenured person, or the nontenured teacher would effectively become tenured de facto. Neither result would reflect our legislatively enacted policy; both would obfuscate the tenure-nontenure dichotomy as presently understood in New Jersey. In our view, the State's interest in preserving a meaningful tenure system presupposes a freedom of selection in choosing nontenured teachers that outweighs the private interest.
Our conclusion is strengthened by the analogous recent decision of Dunbar v. Kelly, 114 N.J. Super. 450 (App. Div. 1971), which involved the nonretention of a New Jersey state trooper. State policemen are appointed by the Superintendent for two year terms. In words similar to tenure law applicable to teachers, N.J.S.A. 53:1-8.1 provides:
Any member of the department of state police who has or shall hereafter serve continuously as such member for a period of five years shall thereafter continue in such membership during good behavior. [Emphasis added] *409 N.J.S.A. 53:1-8 provides that no officer shall be removed without a preference of charges and a hearing. In Dunbar, the plaintiff trooper was not reappointed after his fourth year of service, i.e., the end of the second contract. He contended that he was entitled to know the reason why and to be granted a hearing. The court found that "non-reappointment" was not "removal" under N.J.S.A. 53:1-8, and that to grant plaintiff's request would effectively extend tenure status to him. In so holding, the court said:
The reasons for failing to reappoint at the end of such periods are irrelevant, since we find that the Legislature has granted complete discretion in the Superintendent to determine a trooper's suitability for permanent employment. [at 453]
Similarly, we believe that, subject to constitutional and statutory limitations, the board of trustees had complete discretion not to renew Katz' contract.
In plaintiff's supplemental trial memorandum it is submitted that, aside from the fact that no reasons were actually given, the testimony adduced at trial failed to disclose any reasonable basis upon which his termination could have been justified. In view of Dunbar, we must find that whether actual reasons were given or "possible" reasons shown to exist, these are two sides of the same coin and in either case irrelevant. To require the board to refute plaintiff's proofs of his teaching ability is to require it to give reasons, a requirement which would unduly restrict its discretionary function.
There can be no question that the nonretention of a teacher may jeopardize his professional existence; this is indeed unfortunate. But is this really any different from the case involving the state policeman? We think not, and by implication at least, the Appellate Division in Dunbar did not feel the loss was so great that due process would require a statement of reasons and a hearing.
The failure to give reasons and a hearing for the refusal to rehire is not arbitrary or unlawful action. Inherent in our *410 legislatively enacted tenure policy is the existence of a probationary period during which the board will have a chance to evaluate a teacher with no commitment to reemploy him. "The Board is not a legal tribunal. It is an employer, and when it decides to hire or not to hire a particular teacher, it is acting `as proprietor, to manage the internal operation' of the public schools. * * *." Orr v. Trinter, 444 F.2d 128, 135 (6 Cir.1971), citing Cafeteria and Restaurant Workers Union, Local No. 473 v. McElroy, supra, 367 U.S. at 896, 81 S.Ct. 1743. Traditionally, the discretion of the local board has been unfettered; nor has the nontenured teacher expected anything to the contrary. Today, what was a short while ago a seller's market in teaching talent has become a buyer's market; no doubt our educational institutions will take this opportunity to upgrade their faculties by replacement and substitution of faculty for better qualified personnel. The end result is, of course, that increasingly large numbers of nontenured teachers will not have their contracts renewed year after year. To require such dismissals to be subject to procedures for tenured teachers would be costly and against the public policy of New Jersey. It would effectively amend our tenure law by judicial fiat. We will not take this step. Until our Supreme Court or the Supreme Court of the United States determines otherwise, we hold that it is the prerogative of a board of trustees to discontinue the employment of a nontenured teacher at the end of his teaching contract with or without reason.
The fourth count of the complaint alleges that defendants failed to fulfill their obligations as trustees under N.J.S.A. 18A:64A-12(f) and 18A:64A-13, by whose terms the trustees are charged with the appointment of teaching faculty. It is claimed that defendants were ignorant of plaintiff's teaching record, a knowledge of which was requisite to the proper performance of their duty. We fail to find any merit to this allegation. There is in evidence the fact that the board was briefed by Dr. Apetz on several occasions with regard to Katz. To demand that the board members *411 must of their own make an in-depth investigation or possess first-hand knowledge would impose upon them an intolerable burden. We feel that the trustees acted properly in their considerable reliance upon the president of the college.
A judgment will be submitted in accordance with the opinion expressed herein in favor of all the defendants, without costs.